## THE STATE OF KANSAS v. GEORGE S. SMITH.

1. COUNTY TREASURER; *Embezzlement.* Chapter 83 of the laws of 1873 amending section 88 of the Crimes Act (ch. 31, Gen. Stat.,) includes within its provisions a county treasurer as liable to the penalties for embezzlement.

2. INFORMATION; *Description of Funds Embezzled.* In an information against a county treasurer for embezzling public funds in the county treasury it is impossible and unnecessary to set forth the particular kind of funds embezzled, whether United States treasury notes or bank notes, or gold or silver.

3. PRELIMINARY EXAMINATION; *Plea in Abatement; Variance.* Where the accused was charged before the examining magistrate with embezzling $67,000 of the funds of the county of Leavenworth, and in the information was charged with embezzling $67,378.42 belonging to divers designated funds in the treasury of the county of Leavenworth, and a special plea was interposed that the defendant did not have a preliminary examination as to the embezzlement of any money or other thing belonging to any other person than the county of Leavenworth, nor did he waive his right to such examination, *held,* that there was no error in ruling upon

these facts that the plea was not a bar to the further prosecution of the action under the information.

4. INSTRUCTION; *Questions of Law, and Questions of Fact; Error.* An instruction that asserts that, "when it has been established that the funds or property has reached the hands of the officer, and that the same was not forthcoming when properly or legally demanded, the law presumes an illegal conversion of such funds or property, and the burden of proving the legal use of such property or money is upon the officer," is erroneous in this, that it declares that the law presumes a conclusion that is exclusively within the province of the jury.

## *Appeal from Atchison District Court.*

INFORMATION for embezzlement, filed by the county attorney of Leavenworth county in the criminal court of said county of Leavenworth, on the 9th of March, 1874. The information stated that the defendant *Smith* was duly elected to the office of county treasurer of Leavenworth county in November 1871 for the term of two years commencing on the first Tuesday of July 1872; that he duly qualified, and entered upon the discharge of the duties of said office, and held and occupied said office from the 2d of July 1872 until the 27th of December 1873, when he resigned, and was succeeded in office by George A. Eddy, who was duly appointed, and had qualified to fill the vacancy. The information then charges:

"That while the said George S. Smith was acting as county treasurer of said county of Leavenworth as aforesaid, he the said Smith received, collected and took into his possession, and under his care in his official capacity, aforesaid, and by virtue of his office of treasurer of the county of Leavenworth aforesaid, at different times, and from day to day, during the time from July 2d, 1872, until December 27th, 1873, many and various sums of money, state warrants, county warrants, township warrants, valuable securities, effects, and other vouchers for money, all of which were by him, the said Smith, received and collected as money, and are legally chargeable against him as money; and the aggregate amount so collected and received by him, and that came into his possession, and under his care, by virtue of his office aforesaid, was $564,460.66, and were of the value of $564,460.66: That said money, warrants, valuable securities, effects and vouchers

aforesaid, received and collected by the said Smith as afore-
said, were so collected as aforesaid by the said Smith, for, and
belonging to, and were the goods, chattels and property of
the various persons, classes of persons, corporations and pur-
poses, named and described below in the column marked 'A,'
at the head thereof; and in the column below marked ' B,'
at the head thereof, and opposite the names or description of
each of said persons, classes of persons, corporations and pur-
poses, is the amount of money, warrants, securities, effects or
vouchers, so collected and received for and belonging to each
of said persons, classes of persons, corporations and purposes,
respectively, and which said money, warrants, valuable secur-
ities, effects and vouchers were received and collected by the
said George S. Smith, and the same came into his possession
and under his care by virtue of his said office of treasurer,
and were by the laws of the state of Kansas required to be
collected and received by him, the said Smith, as treasurer of
said county as aforesaid.   And the said George S. Smith, of
the moneys, warrants, valuable securities, and effects, aforesaid,
that had been collected and received by him as aforesaid, and
that had come into his possession and under his care by virtue
of his office of treasurer aforesaid, did, at the county of Leav-
enworth in the state of Kansas, and within the jurisdiction
of this court, on the 27th day of December, 1873, unlaw-
fully, fraudulently and feloniously embezzle and convert to
his own use the sum of $67,378.42, and of the value of
$67,372.42, without the assent of the county of Leavenworth
aforesaid, or of any of the persons, classes of persons, corpo-
rations above mentioned, and named and described below in
the column marked 'A.' at the head thereof, or of any per-
son or persons whomsoever," etc.

The "column below," was an exhibit divided into four col-
umns.   The first division was marked "A," under which was
named and repeated the county, the state, the townships, and
cities, and school districts in Leavenworth county, and several
railroad companies, and specifying the character of all the
various funds coming into the treasurer's hands.   In the
division marked " B," was set forth (opposite the designations
in column "A,") the amount received by the defendant of
each of said funds; in the division marked " C" was set forth
the amount of each of said funds paid out or disbursed by
the defendant, and in the division marked "D" was stated

the amount of each of said funds remaining unaccounted for, and which it was alleged the defendant had appropriated. The totals of the divisions were—"B," amount received, $564,460.66—"C," amount disbursed, $497,082.24—"D," amount due, $67,378.42. The information contained a second count, as follows:

"And the said Luther M. Goddard, county attorney as aforesaid, prosecuting for and in behalf of said state of Kansas, in the name and by authority and on behalf of the said state of Kansas, now here and in said criminal court of the county of Leavenworth, further information gives, that the said George S. Smith, at the county of Leavenworth, in the state of Kansas, and within the jurisdiction of this court, on the 27th of December, 1873, was then and there an officer of the county of Leavenworth in the state of Kansas, an incorporation duly organized, and existing under the laws of the state of Kansas, to-wit, the treasurer of said county, duly elected and qualified, and legally authorized and empowered to perform all the duties of said office; and that the said George S. Smith, as such officer and treasurer of said county, was then and there entrusted, and did then and there have in his possession, and under his care, by virtue of his said office, certain public moneys, to-wit, the sum of $67,378.42, of the property and effects of said county of Leavenworth, and of the value of $67,378.42, and the said George S. Smith did then and there, unlawfully, fraudulently and feloniously embezzle and convert to his own use, without the assent of the said county of Leavenworth, or of any person thereunto authorized, all of the same public moneys aforesaid, with the custody and care of which he the said George S. Smith was then and there so as aforesaid entrusted, and did then and there have and hold, by virtue of his said office of treasurer of the county aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

*Smith* appeared, and on his verified petition the venue was changed to Atchison county, and the transcript was filed in the Atchison district court on the 5th of May, 1874. The June Term 1874 of said district court convened on the 8th day of June. On the 12th *Smith* moved to quash said information "because the same does not, nor does either count

thereof, contain facts sufficient to constitute a crime under the laws of the state of Kansas." This motion was overruled. He then filed a special plea in abatement, alleging that "in so far as said information charges the embezzlement or conversion of money or other things belonging to any other person than the county of Leavenworth, he did not have a preliminary examination, as provided by law, nor did he waive his right to such examination." In support of this motion the affidavit on which he was examined before the police judge of Leavenworth (and which appears in the record,) was produced, and after the caption, title, and venue, is as follows:

"Enos Hook being first duly sworn, says, that on the 16th of December, 1873, at the city of Leavenworth, in the county of Leavenworth, state of Kansas, George S. Smith was then and there an officer of the county of Leavenworth, an incorporation duly organized and existing under the laws of the state of Kansas, to-wit, the treasurer of said county, duly elected and qualified, and legally authorized and empowered to perform all the duties of said office; and that the said George S. Smith, as such officer and treasurer of said county, was then and there elected, and did then and there have in his possession and under his care by virtue of his said office certain public moneys, to-wit, the sum of sixty-seven thousand dollars, of the moneys belonging to said county, and of the value of sixty-seven thousand dollars, and the said George S. Smith did then and there unlawfully, fraudulently and feloniously embezzle and convert to his own use, without the assent of the county of Leavenworth, all of the same public moneys aforesaid, with the custody and care of which he, the said George S. Smith, was then and there so as aforesaid entrusted, and then and there did have and hold by virtue of his said office of treasurer of the county aforesaid, contrary to the form of the statute in such case made and provided."

The plea in abatement was overruled. *Smith* then pleaded not guilty. A jury was impanneled and the case tried. The evidence is not preserved in the record, but it is stated in the bill of exceptions, that "*it was proved on the trial* that no legal demand, by warrant, order, coupon, bond, or otherwise, was ever made upon the defendant which was not paid, and

that the only neglect or refusal was to pay to his successor in office the amount appearing to be due by the schedules attached to the information." The record contains several pages of instructions asked by the defendant, and refused by the court. The court gave the following general charge to the jury:

"As jurors it is your sworn duty to carefully examine the evidence and apply it to this case, under the law as given you by the court. You are the exclusive judges of the evidence, and of the weight of evidence, and you have the right to believe or disbelieve any witness in this case, and then give it that consideration you in your judgment think it is entitled to receive; and if after you have thoroughly examined the evidence in the case, and the instructions given you by the court, you are convinced beyond a reasonable doubt of the guilt of the defendant, you will so find and convict him of the crime of embezzlement, and will specify in your verdict the amount you find was so embezzled or converted to his own use. But on the other hand, if there yet remains in your minds a reasonable doubt as to his guilt, you will give the defendant the benefit of this doubt, and will acquit him altogether. By reasonable doubt is meant such a doubt as a reasonable man would entertain, and not one merely imaginary or fanciful.

" The defendant is charged in the information with having feloniously embezzled and converted to his own use certain funds in his hands as county treasurer of the county of Leavenworth. Before the defendant can be legally convicted under this charge, it must appear to the satisfaction of the jury from the evidence, beyond a reasonable doubt, that when county treasurer of Leavenworth county he did feloniously and fraudulently (that is, with the intention, design and purpose of appropriating to his own use,) embezzle and convert said funds. The gist and essence of every crime, consists of the intention of the person charged, and unless the evidence establishes a guilty intention beyond all reasonable doubt, the defendant must be acquitted. By guilty intention, I mean the intention to do the act which was unlawful; and it makes no difference whether he considered it a crime or not.

" During the time the defendant was county treasurer of Leavenworth county, he had the sole right to the custody, control and management of all moneys coming into his hands as such officer, and had the right, if he so choose, to keep such

funds along with any private funds of his own — had the legal right to deposit such funds in any bank, or keep them in his office, or at his house, or on his person. In other words, the law did not prescribe how he should keep the public funds; and it was no violation of law to keep them as he saw proper. The only duty imposed by law on him in this regard was, that he should properly keep and pay such funds out upon legal demand being made therefor. It being the legal right of the defendant to keep his money and papers of whatever character which came into his hands as county treasurer, wherever he pleased, he was at perfect liberty to place them where he chose. He was not bound to keep any books concerning his deposits; nor was he bound to state to his clerks or any one else where his funds were; and even though he did not tell his clerks where the funds were, or did not tell them correctly, that fact alone is not sufficient evidence of embezzlement. And if by bad management and through and by reason of a financial crisis, or the failure or dereliction of any bank in which his funds were deposited, or through or by reason of the embezzlement of the funds of such bank by any of its officers, the defendant was unable to pay to his successor in office the amount payable under the law, under this state of facts he cannot be convicted of embezzlement.

"An embezzlement cannot take place until a party refuses to account for, or falsely accounts for the fund or thing alleged to have been embezzled.

"In any event, before the jury can legally render a verdict against the defendant they must be able to determine from the evidence *whose* money was embezzled, substantially the amount thereof, and to whom it belonged.

"If the jury can account for the loss of the fund, money, or thing alleged to have been embezzled on any reasonable hypothesis other than the guilt of the defendant, they must acquit."

And at the instance and request of the counsel for the state the court gave the following instructions:

"The defendant George S. Smith is charged by the information filed herein, that at the county of Leavenworth and state of Kansas, on the 27th of December, 1873, he did then and there, being county treasurer of said county of Leavenworth, and then and there acting as such treasurer of said county, and being then and there by virtue of his said office in possession of moneys, goods, valuable securities and effects

belonging to the county of Leavenworth, the state of Kansas, and to the various persons, classes of persons and corporations named in said information, and said moneys, goods, valuable securities and effects having come into his possession and under his care by virtue of his office as such county treasurer, willfully, unlawfully and feloniously convert to his own use and embezzle such moneys, goods, valuable securities and effects to the value of $67,378.42, belonging to the county of Leavenworth and the other persons, classes of persons and corporations named in said information. To embezzle is to appropriate fraudulently to one's own use, that which is entrusted to one's care; to apply to one's private use by a breach of trust. It is to fraudulently remove and secrete personal property with which the party has been entrusted, for the purpose of applying to his own use.

"The laws of Kansas do not prescribe what a county treasurer shall do with public moneys and property while in his custody. It is lawful for him to deposit it in a bank for safe keeping, to keep it in his office, or on his person. The law does not prohibit him from placing such funds in the custody of another. But the use by the county treasurer of moneys or effects in his hands as such treasurer, belonging to any municipal corporation, and of which the law makes such treasurer the custodian, which has come to his hands, and under his care, by virtue of his employment or office, for the purchase of property in such treasurer's own name for private purposes, or to pay his private debts, or in making loans to another for interest, or accommodation, is unlawful, and constitutes a conversion of such moneys and property, whether such treasurer at the time of so using such moneys or effects intended to replace or repay such effects or moneys or not.

"Although the information in this cause, charges that the embezzlement was done by the defendant on the 27th of December, 1873, to sustain said information it is not necessary that the proof should show that the acts constituting such crime were actually done on that day, but the information is sustained by proof, showing said acts to have been committed at any time within two years preceding the filing of said information.

"The statute defining the crime and fixing the punishment for embezzlement was designed to punish the fraudulent or illegal conversion of money or property entrusted to the care of the persons named in the statute, and as a safeguard against such fraudulent or illegal conversion of such property; and

The State v. Smith.

when it has been established that the funds or property charged has reached the hands of the officer, and that the same was not forthcoming when properly or legally demanded, the law presumes an illegal conversion of such funds or property, and the burden of proving the legal use of such property or money, is upon the officer.''

The jury returned a verdict of "guilty of the embezzlement of $67,378.42, the personal property of another, as is charged in the information filed against him." On the 29th of June defendant's motions for a new trial and in arrest of judgment were overruled. And the record then shows that thereupon, (on said 29th of June) —

"It is adjudged by the court that the defendant George S. Smith be and he is hereby sentenced to confinement in the state penitentiary of the state of Kansas for the term of one year *from the 8th day of June* 1874." *

From this judgment the defendant appeals to this court.

*Stillings & Fenlon,* and *Taylor & Gilpatrick,* for the appellant:

1. The main question in this case is, whether the act of 1873, which amends § 88 of the crimes act, includes within its provisions a county treasurer. It will not be denied that embezzlement is a purely statutory crime — that it was a matter of the legislature to determine *what classes of persons* were to be included, and what classes of property might be embez-

[ *Court convened on the 8th of June; sentence was pronounced on the 29th. Sec. 291 of the Crimes Act, (Gen. Stat., 381,) explicitly provides—

"But no person shall in any case be sentenced to confinement and hard labor *for any term less than one year.*"

In this case the words, "and hard labor," do not appear in the sentence. Whether erroneous by reason of such omission or not, (4 Wis., 395, 398; 5 Wis., 29; 12 Wis., 313, 534,) there would seem to be no doubt that the sentence as to time or duration was contrary to the express provision of the statute. If 21 days *less* than a year does not invalidate the sentence, then 121, or 221, or 364 days less than a year would not render it invalid. As the court reversed the judgment upon other grounds, this error, (if it be one,) was not noticed in the opinion. The defendant's counsel did not discuss it—it was an error favorable to their client; but the profession generally, at the time it was announced, regarded the sentence with surprise, and doubted the authority of the district court to fix a less term than one year from *the day of pronouncing sentence.* And the question did not escape the attention of the counsel for the state. In their brief they say—"If the sentence is one that the court below should not have rendered, it is the duty of this court to modify such judgment, and direct said court to assess the proper sentence." Where a sentence is more favorable to a defendant than that prescribed by law, he can take advantage of the error if he chooses to do so: 4 Wis., 398; 4 Metc., (Mass.) 360.—Reporter.]

zled.   We submit, that unless a county treasurer is plainly
mentioned in the statute, or other words used which leave no
fair question as to the intention of the law-making power to
include such officer, then he is not to be considered as within
the law.

The law of embezzlement as found in our statutes, has been
but little changed since the time of Henry the Eighth, and
its legislation and judicial history will fail to show that any
law-making power, or any court other than the one from
whose judgment we now appeal, has ever held that this stat-
ute embraced within its meaning a county treasurer.   The
court below held that it did embrace a county treasurer, be-
cause the statute uses the words "*if any officer of any incor-
poration,*" and held that because other statutes made counties
corporations for certain purposes, that Smith being county
treasurer of Leavenworth county, was therefore "*an officer of
an incorporation*" within the true spirit and meaning of the
embezzlement law.   Most of the embezzlement statutes of
the American States instead of using the word "*incorpora-
tion,*" use the term "*incorporated company,*" and hence our
statute is to this extent peculiar and *sui generis* in its language;
but when the code commissioners who compiled the statutes
of 1868 were considering the original statutes they simply
struck out the words "incorporated company," and inserted
the word "incorporation," but whether for euphony or rhetoric,
to say in one word what had before that time been expressed by
the two words stricken out, it could not have been intended
by the code commissioners nor by the legislature that the
change in the language was for the purpose of bringing within
the meaning of the statute a large class of persons not there-
tofore considered within its purview.   This is evident from
the fact that in most of the states which have a general em-
bezzlement statute similar to ours there are are also statutes
specifically denouncing embezzlements by public officers, and
from the further fact that the whole history, legislative and
judicial, of this embezzlement law under consideration shows
that it was intended to punish the fraudulent embezzlement

and conversion of property by *clerks, servants, apprentices, officers, agents, etc.,* of incorporations *"without the assent of the master or employer."* Who is the *master* or *employer* of a county treasurer? He is subject to the order of no employer or master; he is an officer of the law, charged with public duties, bound to obey the law; the only and sole authority over him is with the county commissioners, to call upon him to settle; and to say that. he has a master, or employer, is to assert an absurdity. The information charges the embezzlement. of the funds to have been done *"without the assent of the said county of Leavenworth."* The pleader considered this an essential averment. How could the county of Leavenworth assent? By no fair interpretation of language can we see how a court could hold that the legislature intended to go beyond the condemnation of the servants, officers and agents of private persons, either natural or artificial. Any other construction of the statute is strained and unnatural, and the fact that the statute has been in existence in England and this country for hundreds of years, and not a solitary prosecution ever brought under it against any of the vast army of public delinquents, is an unanswerable argument to the effect that the judicial wisdom of over three hundred years has been unable to discover in this statute what has been claimed by the prosecution in this case.

2. The legislature has seen proper to go no further than protect the public funds in the hands of county treasurers by requiring bonds for the security of such funds, and inflicting certain prescribed penalties for dereliction upon the part of such officials. The attention of the court is called to the record where it appears that it was *proved* that the *only* neglect or refusal on the part of Smith was to pay to his successor in office the amount appearing to be due by his books. If that be true, what penalty does the law inflict? Sec. 73, page 270, Gen. Stat., specifically provides that when this state of facts shall exist the treasurer "shall forfeit a sum of not less than one hundred dollars, nor more than five hundred dollars, and be liable on his official bond for such refusal or neglect."

Yet here, in this case, instead of being subject to the law laid down to cover the exact state of facts shown, instead of being liable to a forfeiture of from one to five hundred dollars, the defendant is convicted of a felony and sentenced to the penitentiary.

3. But if it can possibly be held that a county treasurer is within the jurisdiction of the embezzlement statutes, we claim that the court erred in refusing the instructions asked by defendant below.

And we claim that the court erred most grievously in giving the instruction in these words: "When it has been established that the funds or property charged has reached the officer's hands, and that the same was not forthcoming when properly or legally demanded, the law presumes an illegal conversion of such funds or property, and the burden of proving the legal use of such property or money is upon the officer." This instruction we submit is in violation of every well-known principle in the trial of criminal cases. The law never presumes anything against a defendant, and never casts the burden of proving his innocence on him. The instruction is in direct conflict with the adjudications of this court on similar cases. (Carl Horne v. The State, 1 Kas., 72.) The doctrines that apply to the constructions of the statute under consideration, and the principles that govern the trial of cases properly brought under it, are so fundamental in their nature, and so well known, that we forbear to quote authorities at any length, but satisfy ourselves by calling attention to 2 Wharton's Cr. L., 1940; Wharton's Prec. & Plea., 460; 22 N. Y., 245; 5 Denio, 76; 15 Wend., 147; Roscoe's Crim. Ev., 402; 2 Bishop's Cr. L., § 376; 31 Cal., 108; 47 Ill., 202; 21 Iowa, 267; 7 Ohio St., 115; 22 Ind., 129; 18 Minn., 199.

4. The court also erred in refusing to sustain the special plea to the information. The statute in substantially abolishing the grand jury system specifically provided that no information should be filed by the county attorney against any person, until such person should have a preliminary exami-

nation as provided by law.  In this case, as shown by the
special plea and evidence to sustain it, there was no charge
made before the committing magistrate, and of course no ex-
amination had of any offense except the embezzlement of
money belonging to the county of Leavenworth, and the
defendant was compelled to plead and go to trial for the em-
bezzlement of funds belonging to some fifty or sixty different
persons.

*L. M. Goddard*, and *J. W. English*, for The State:

1.  Does the law of Kansas (Laws of 1873, page 177,) cover
the case of a county treasurer ?  The history of English and
American legislation on this subject must throw some light on
this question.  All the English statutes upon the subject of
embezzlement are directed against those who misappropriate
the funds and property of private persons and private corpo-
rations, and other laws have been enacted to punish public
officers.  So, also, the legislators of the various American
states have enacted laws of a similar character with the
English statutes, and in all or nearly all the same law declares
the defalcation of public officers to be criminal, and imposes
penalties for such crimes.  In Kansas, up to 1868, the em-
bezzlement law was similar to the English and the other
American statutes above spoken of. (Comp. Laws 1862,
p. 301, § 82.)  But when the revision of 1868 was adopted
the embezzlement statute was changed so as to enlarge the
terms used, and instead of "incorporated companies," as used
in 1862 and in all the English and American statutes, the
word "incorporation" was substituted, and except as to state
officers, and county treasurers neglecting or refusing to pay
to the state taxes collected, no punishment is imposed upon
defaulting county officers in express terms.  We also find by
§§ 1 and 2, ch. 25, Gen. Stat., that "corporations are either
*first*, public, or, *second*, private.  A public corporation is one
that has for its object the government of a portion of the
state."  No better or more apt words could be well imagined
to create a county into a corporation.  With these differences

in view between our statute and all others in these general respects, we must presume that for a wise purpose the change in our laws was made. As it first was, from 1862 to 1868, a private corporation only could be intended; in 1868 the words are so changed as to embrace both *public* and *private* corporations as defined by the enactment of the same legislature (1868.) Would it be reasonable to say that for mere *euphony* a change so radical would be made? The words as used in the laws of 1862, following the English law and all the American statutes, have a fixed and definite meaning, established for two hundred years, by constant use without change, and by reason of a long series of decisions of the courts of last resort during all that time. Manifest propriety would require that if the legislature of 1868 intended merely to re-enact the law of 1862, that they should use the words which are universally used and construed as having a fixed and definite meaning; and the fact that a change has been made in the verbiage (under such circumstances) demonstrates that, for some reason, the legislature wished to convey a different idea, and intended either to contract or enlarge the class of associations spoken of, and not to leave the law just as it was, notwithstanding the change.

It has been contended, however, that this court has decided that a county is at best but a *quasi* corporation, and that for that reason it could not be intended that this law would embrace county officers. We can readily conceive that for some purposes a county may be deficient in some of the attributes of private corporations, but in all respects in which it does exercise the functions of a corporation it can and does use and possess them as perfectly and completely as a railroad company, or any other private corporation; but owing to public policy it may be, and doubtless is, necessary to restrict them greatly. We are, however, at a loss to understand how or why the county of Leavenworth, "which has for its object the government of a portion of the state of Kansas," is not enough of a corporation, under the law of Kansas, to guard itself against a plunderer of its treasury.

Again, as an index to the idea influencing the legislators enacting this law, we think there should be some notice taken of the omission to enact a law to punish county officers who violate their duties, and also of the fact that the law of Kansas does define the crime and prescribe the punishment to be inflicted upon a defaulting state treasurer. Would so significant an omission have been made, (on the theory that the legislature was honestly endeavoring to guard against fraud,) if it had been believed by them that (as the law was then worded,) county officers could plunder the county treasury with impunity? Evidently, the legislators believed that by the change they had wrought in the law of 1862, they had provided for cases like the one at bar; and remembering the fact that the entire state could not be deemed a corporation within §§ 1 and 2, ch. 25, Gen. Stat., they enacted the state-officer law, making, as they believed, the statutes broad enough to cover the wide range of official corruption in the state.

It has been contended that the words, "without the assent of his employer," are qualifying words, limiting the construction of this statute to private corporations. We think this construction not legitimate. Of course, in the strict sense, there is no employer for a county treasurer; but he is elected by the people, and receives a salary as compensation for his services. But in these respects does he differ from a bank president, who is also elected indirectly by the stockholders, and receives his salary, and is the head of the company, and has no other employer than the stockholders? In every respect these words would just as much exclude the president of the bank as the treasurer of the county; because, in either case, no employer could be found to consent. (10 Michigan, 82, 83.) For this court to hold otherwise, must determine that official corruption is no crime in Kansas; and that our laws are framed for the encouragement of larceny by public functionaries; and the court need go no further for a precedent for such a construction of Kansas laws than to the official conduct of the dozen defaulting county treasurers, most of

whom are now anxiously looking for the decision of this cause. We think this court cannot be disposed to take so narrow a view of this embezzlement law; but that the obvious intention of the legislature will be fully carried out, and crime will be met by merited and just punishment. This evidently was the view taken by the district court on the trial of this cause; and we think the court committed no error by so doing.

If the sentence is one that the court below should not have rendered, it is the duty of this court to modify such judgment, and direct said court to assess the proper sentence. Criminal Code, § 291.

2. The second instruction asked by defendant was properly refused, as its equivalent was given in the general charge. The 3d is manifestly wrong, in that it requires the state to show by evidence the design, intent and purpose to cheat and defraud the person entitled to such fund; and reasonable doubt as applicable to this proposition is absurd, as intent must ever be inferred from the conduct of the party, and can, from the nature of the case, never be established as an affirmative fact. The 4th was given with a modification so clearly right that it seems useless to dwell on it. The 5th, 6th, 7th, and 8th were much too broadly stated, and are mere abstract propositions, of which what of good law is in them the court gave in substance, and only rejected that which would require the state to prove things impossible to be proven, the intent of a party in any of his acts. We hold that the intent must be inferred from the acts of a party; that the law raises presumptions as to intentions from actions, and if the act is proved, the defendant must establish an innocent motive, or the law presumes that he contemplated the natural result of his acts. Acts must be proved beyond a reasonable doubt. The inmost workings of the human heart, or reason, cannot be proved, but must of necessity be presumed; and to instruct a jury otherwise is an absurdity. These observations apply to every of the instructions asked and modified by the court.

It is contended that the instruction that upon the failure by

19—13 KAS.

a public officer to pay on proper demand a fund which came to his hand as such officer, the law presumes an illegal conversion, etc., takes from the jury the decision of the question of the guilt of the defendant, and instructs them that certain facts being established the defendant is guilty, and they must so find. We do not so understand this instruction. Our idea in asking it was, to have the jury understand, that when it was established that the defendant had the property named, and that he refused (when he should surrender it) to give it up, that that was a conversion within the meaning of the law, and that those facts being established, the burden was on the defendant to show a lawful excuse for the detention—in other words, we merely defined what *all law books* established as a "conversion" in the absence of any proof to the contrary, and in addition, the idea that when a conversion by the defendant was established, the justification being exclusively within the knowledge of the defendant, the law imposed upon him the burden of establishing it in his own behalf. There can be no question that the burden of proof can be shifted from one side to the other in criminal cases. In larceny, the possession of stolen property soon after it was stolen, throws the burden of proof on the prisoner to show an innocent possession. In murder, the killing by prisoner being proved, with no circumstances showing the motives, the burden is upon the defendant to show justification. In case of state treasurer, the statute defines presumptions almost in the words of this instruction. (See Gen. Stat. 1868, p. 984, §§ 56, 57; 15 Wend., 581; Roscoe's Cr. Ev., 80.) No better established principle can be found than that a lawful demand by one legally authorized to receive from one legally requested to surrender, and a refusal to surrender, constitutes a conversion; and when such demand and refusal is established, upon whom should devolve the responsibility of showing a legal and proper reason for refusing to comply with such demand, unless the defendant who made such refusal? The general rule that the party having the affirmative of any proposition, must establish it, for rarely is it possible to establish a nega-

tive, demands that our proposition is the true interpretation of the law. And, taken with the fact that all the instructions given by the court, as a whole, modify this instruction so as to be clearly within the law, as contended for by the defendant, we are unable to see any error in this instruction even from their standpoint.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellant was charged with the offense of embezzling the funds in the county treasury of Leavenworth county. He was tried and convicted, and from the judgment of the district court appeals. Several errors are alleged, two of which raise the question of the sufficiency of the information. The first in order of time as well as in importance is, whether the law of 1873, page 177, amending § 88 of the crimes-and-punishment act of the General Statutes, includes within its provisions a county treasurer. So much of that section as is relevant to this case is as follows:

1. Embezzlement; construction of statute.

"If any clerk, apprentice or servant of any private person, or of any co-partnership, * * * or if any officer, agent, clerk or servant of any incorporation, or any person employed in such capacity, shall embezzle or convert to his own use, or shall take, make way with, or secrete, with intent to convert to his own use, without the assent of his employer, any goods, rights in action, or valuable security, or effects whatsoever, belonging to any person, co-partnership, or corporation, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction thereof, be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, taken or secreted." * * *

Is the county treasurer such an officer as is contemplated by the statute? It is urged with great ability and ingenuity that this question must be answered in the negative on the ground that a county is not a corporation within the meaning of the term as used in the act, and that this is apparent from the language used; that the section provides that the embezzlement must be without the assent of the employer, and that the treasurer

The State v. Smith.

is not the employe of any one, and even if it should be held that the county was his employer, it could not in any way "assent" to an unlawful appropriation of its funds. Again, it is urged that the treasurer, by giving bond as required by law, becomes not a bailee, but a special insurer of the public funds that come into his possession, and therefore no criminal liability attaches to him for any use he may make of such funds. The legislature having made him an insurer, could not have intended also to make him a criminal. The course of reasoning is only suggested, and no attempt is made to state it at any length. The court has reached a different conclusion from the counsel for the appellant on this point, and the reasons for such conclusion will be briefly indicated.

A sketch of the legislation upon the subject of embezzlement is given by Mr. Bishop in the second volume of his work on Criminal Law, from which it will be seen that from the time our ancestors thought it necessary to legislate upon this subject that the law has been gradually enlarged in its scope as from time to time society required such action. The section of our statute quoted above embraces within its terms a much greater variety of classes of persons who can commit the crime of embezzlement, and a much greater variety of circumstances under which it can be committed, than was provided for in the older statutes in which the law on this subject had its origin, and in some respects than any of the statutes of other states that have come under our notice. It is not necessary to point out these changes except in one instance, and that is the substitution of the word "incorporation" in the General Statutes of 1868 for the phrase "incorporated company" in the Compiled Laws of 1862, (§ 82, p. 301,) and the continued use of this word in the laws of 1873, while in this last statute the word "corporation" is added in describing the parties whose goods, etc., may be embezzled. This change must have been made for a purpose, and in our judgment it was intentionally made so as to include many persons who were not before within its letter. The substituted word in the General Statutes is an awkward

one, yet still it expresses its purpose with sufficient precision. While the word "corporation," which is also used in the law of 1873, is a better one, it still does not change the meaning. Neither the revisors nor the legislature could have been ignorant of the difference between private and public corporations, and when they substituted a term that embraced all corporations for a phrase that evidently included only a voluntary association of persons, it will hardly do to say that they did it for the sake of euphony. The same revisors and the same legislature declared that counties were bodies corporate, (§ 1, ch. 25,) and must have known that the change in the section quoted would bring within its terms a large class of officers of municipal corporations, and others not theretofore embraced within its provisions. Take the plain terms of the law of 1873, and the declaration that counties are corporaations, and there can be little doubt that county officers are embraced within the letter of the statute. We are referred to the legislation of other states to show that those states have thought it necessary to enact specific laws embracing county officers, although their statutes in reference to embezzlement were very similar to our own. The inference we draw from such legislation is, that as it has been found necessary elsewhere it may have been thought important in this state; and certainly it was as well to do it by a change in the language of the statute of embezzlement as by a separate enactment. Indeed, it seems to us the better way. If the agents of individuals or incorporated companies should be punished for certain specified offenses, then it seems fit that the agents of the public should be punished for a like offense.

Nor does the giving of a bond indicate a purpose not to secure the public interests by punishing those who wrongfully execute the public trusts confided to them. Such bonds are frequently given by the employes of private persons, and yet that would not be claimed as exempting them from the penalties of the law of embezzlement. We cannot perceive why a bond should have any other effect when required by law than when exacted by contract. This view is strength-

ened by reference to other provisions of our statutes which inflict severe penalties on the county treasurer for much less serious offenses than the one charged in this case. (See Gen. Stat., § 73, p. 270, and § 75, p. 930.) It is urged on this point that § 51, p. 264, establishes the relation of debtor and creditor between the county treasurer and the public, and that the treasurer being the debtor for the funds in his possession cannot be guilty of embezzling what is his own, as he owes it. But such is not the meaning or purpose of that section. It was intended to, and does, prescribe the method of keeping the treasurer's books, but does not pretend to determine the relations of the county treasurer to the county. To draw from a section of law intended to provide a convenient form of keeping an account, an inference that those provisions define and establish the relations of the treasurer to the county, is hardly warrantable, and in our view not sound.

It is argued that the treasurer cannot be included because he has no "employer," and by the statute the offense can only be committed against the assent of the employer. One thing is certain, that the treasurer is employed in his office, on business not his own, and not volunteered, but in pursuance of certain well-known conditions. All these facts constitute an employment, and also an employer and employe, and while we shall not attempt to define who is the employer, we are satisfied that there is one, and the fact that that employer cannot authorize the illegal use of the funds in the treasurer's hands, only simplifies the necessary testimony, but does not change the construction of the law. The truth is, that in the original English statute the word was a necessary one, and has been retained in all the changes, although in some respects its place is an awkward one. It still retains its place in our statute, and if there is any supposable case where the word embezzlement itself does not presuppose the non-assent of the principal or employer, it must be in a case where the employer is legally incapacitated from giving such assent.

II. Another defect alleged is, that the information fails to specifically describe the property charged to have been em-

2. Description of moneys or funds embezzled by public officers.

bezzled. The information charges specifically to what fund each portion of the total charged belongs, but does not describe the kinds of money embezzled. In transactions such as are now under consideration, running through a long period of time, and involving large sums of money, received from a whole community, and being constantly changed by the necessities of the office, such a description of the funds is impossible, and if necessary to be averred must be proven, and therefore is an effectual bar to all prosecutions under the law. Mr. Bishop in his treatise on Criminal Law, after showing that under the English statutes the courts have held that the particular property embezzled must be specifically described, and pointing out cases where such description would be impossible, makes upon those decisions these observations: "That a court departs from its duty when it does not allow some form of pleading to cover every offense known in the law. We conclude, consequently, that embezzlement may in reason be committed under the circumstances mentioned in this section, and that those courts which have determined otherwise have erred." (Vol. 2, § 315a.) We are not forced to discuss the authorities on this point, for the change in the law necessarily compels such construction of its provisions as will give it effect, and we do not think that the reason of those decisions when applied to the agents of private persons, who can at all times scrutinize the acts of those in their employ, apply to a public officer. The public at large can exercise no constant supervision over his acts, nor can it, like a private individual, assume the direct custody of the funds at any moment. The proper authorities may require him to account, may examine the funds in his possession, but in the next hour all these funds may be changed, long before the act of embezzlement is done, or the intent is formed. To suppose that the legislature, when they added the large class of public officers to those who might be amenable to the law for the offense of embezzlement, intended to require proof of the identity of the money embezzled, or a description of it, and from whom it

was received, is to infer that they intended to enact a law the enforcement of which would be impossible. It will not do to permit an artificial rule of pleading, having a doubtful foundation in reason, to lead to such a disastrous result. This exact point has been decided in Michigan in a very able opinion, (*The People v. McKinney*, 10 Mich., 54,) and we but follow that decision in holding that the information is not defective in not describing precisely the funds embezzled.

III. The next error alleged is in the overruling the special plea of defendant. These are the essential facts: Smith was arrested on a charge of embezzling the sum of $67,000 of the funds belonging to the county of Leavenworth. The information charges him, in the first count, with embezzling $67,378.42 belonging to divers designated funds in the treasury of the county

3. Preliminary examination; plea in abatement; variance in amount and description.

of Leavenworth. The special plea is, that the defendant did not have a preliminary examination as to the embezzlement of any money or other thing belonging to any other person than the county of Leavenworth, nor did he waive his right to such examination. The court upon an inspection ruled against the defendant, and with some hesitation we conclude correctly. To hold that the warrant of a justice should describe the offense as accurately as the information, would in most cases be to defeat justice. They are generally unlearned in the technicalities of the law, and describe the offense in general terms, while the information is expected to be more exact in its terms, and more full and accurate in its statements. We think the main purpose of the required preliminary examination was reached in this case, and the defendant sufficiently apprised of the general charge, in the complaint before the police judge, of what offense he would have to answer in a more definite charge before the district court.

IV. The remaining questions in this case arise upon the instructions; and while the counsel for the appellant in general terms complains of the refusal of the court to give a great number of instructions covering many pages, yet no specific error is pointed out except as to one instruction to be

noticed immediately.   Many of these instructions so refused

*4. Instructions: question of law, and questions of fact.* were substantially and correctly given elsewhere in the charge, and so were properly refused; of others, the meager statement of the evidence in the record leaves us unable to say whether they were relevant to any testimony in the case or not.   In this state of the case we cannot say that any of the instructions were improperly refused.   One of the instructions given is as follows:

"The statute defining the crime and fixing the punishment for embezzlement was designed to punish the fraudulent or illegal conversion of money or property entrusted to the care of the persons named in the statute, and as a safeguard against such fraudulent or illegal conversion of such property; and *when it has been established that the funds or property charged has reached the hands of the officer, and that the same was not forthcoming when properly or legally demanded, the law presumes an illegal conversion of such funds or property, and the burden of proving the legal use of such property or money is upon the officer.*"

The last part of this instruction lays down a rule to which we cannot assent.   It would be most perilous to an officer who had faithfully discharged responsible duties for a series of years, handling in his official capacity large amounts of money, and who should find at last that there was a deficiency for which he could not account, or replace, although for a sum which, compared with the amounts which had passed through his hands, would be trivial.   In such a case, under the instruction given, a jury would be compelled to find a verdict of guilty, although they might believe the man was perfectly honest.   Nor is this an extreme case.   Much harder ones may readily be imagined.   In every case the jury are the sole triers of the main fact of the guilt of the accused, and judges of the testimony establishing each fact necessary to constitute the main fact.   The facts are to be proven; what those facts show, is for the jury to decide.   It may be considered law in this country generally, that the burden of proof in criminal cases is on the state, and that this burden never changes.   It is true that there are some decisions seemingly adverse to this opinion, but they are very few, and do not

rest on sound reasoning. The accused stands on the presumption of his innocence until a complete case is made against him, and if the testimony is insufficient on any point he must be acquitted. These rules are merely stated. Neither the public nor the profession is interested in the discussion of questions long settled, well understood, and generally acquiesced in. This instruction, we think, violates these rules, and is therefore erroneous. In the argument it is likened to an accused person being in the unexplained possession of property recently stolen. The cases are not analagous. In the latter case the crime itself is already proven. The possession of the fruits of the crime is such evidence as authorizes the jury to find such possessor guilty, and whether this is a presumption of law or fact, or no presumption at all, need not now be stated. We only desire to point out the difference between the two cases. In the one case it is used to prove both the offense and the offender; in the other it is only used to prove the perpetrator of a crime already proven. In the case at bar, such evidence would be sufficient if the jury believed the facts showed also the guilty intent of the accused to convert the property to his own use. Ordinarily, a jury might well draw such an inference from such facts; but the court below says in effect that they are *compelled* to draw such an inference, and this, in our opinion, is an unauthorized assumption by the court of a duty that belonged exclusively to the jury. From the proven facts the jury, not the court, must find that the accused converted the money to his own use. In this case they might well have found him guilty from the facts proven, if they had been left at liberty to weigh the value of these facts, as well as any others necessary to prove the guilt of the accused. We are not certain that the instruction misled the jury, but we are not certain that it did not; and as it is clearly erroneous, on this ground alone we are constrained to direct a reversal of the judgment, and order a new trial in accordance with the motion of the appellant.

All the Justices concurring.