[No. 1,060.]

THE STATE OF NEVADA, RESPONDENT, v. B. H. CARRICK, APPELLANT.

EMBEZZLEMENT—COUNTY TREASURER—SUFFICIENCY OF INDICTMENT—PROOF. In an indictment against a county treasurer for embezzlement, it is sufficient to allege and prove the felonious conversion to his own use of any money that came into his possession, or was under his control by virtue of his office, without specifying with certainty the particular kind of funds embezzled, or the particular time when the money was received.

CHALLENGE TO JUROR—OPINION UPON FACTS—WHEN NOT DISQUALIFIED.— A juror stated that he had an unqualified opinion that there was a deficiency in the accounts of the defendant, as county treasurer, but had no

opinion as to defendant's guilt or innocence: *Held*, that a challenge to the juror, for implied bias, was properly disallowed.

Confessions—When Admissible.—A statement made by defendant to two of his bondsmen, that he was short in his accounts, at a time when he was not charged with crime, or under arrest, when no proceedings were threatened or any promise made to shield him from a criminal prosecution: *Held*, admissible in evidence.

Idem—When not Admissible.—It is only in cases where the confession is obtained by mob violence, or by threats of harm, or promises of favor, or worldly advantage held out by some person in authority, or standing in such intimate relation that the law will presume that his promises or threats will be likely to exercise such an influence over the mind of the accused as to induce him to state things that are not true, that will authorize the courts to exclude the confession or admission.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*R. H. Taylor* and *W. H. Dickson*, for Appellant:

I. The indictment contains no sufficient description of the moneys alleged to have been embezzled. (2 Bish. Crim. Pr., secs. 703, 704; 2 Bish. Crim. Law, sec. 374; *Rex* v. *Tyers*, Russ. & Ry. 402; *Rex* v. *Flower*, 5 Barn. & Cress. 755; *Rex* v. *Furneaux*, Russ. & Ry. 335; *State* v. *Murphy*, 6 Ala. 845; *People* v. *Cox*, 40 Cal. 275; *State* v. *Kroeger*, 47 Mo. 530; *State* v. *Stimson*, 4 Zab. 9.)

II. The evidence should have established an embezzlement of some sum of money, received by defendant at some one time, or which was shown by the evidence to have been under his custody or control at some particular time. Evidence of a general deficiency simply is not sufficient. (2 Bish. Crim. L., sec. 375 *et seq.;* 2 Bish. Crim. Pro., sec. 336; 2 Russ. Crimes, 167, 168, 181, 182, 183; Archb. Crim. Pr., 1353, 1354, 1356, 1357; *Brierly* v. *Cripps*, 7 Car. & P. 709; *Colby* v. *Hunter*, 3 Id. 7, note a; *Rex* v. *Hamilton*, 8 Id. 49; *Watkins* v. *Morgan*, 6 Id. 661; 2 Russ. on Crimes, 460, note z.)

III. The juror Coyne having formed an unqualified opinion to the effect that there was a deficiency in the accounts of defendant as treasurer, the challenge by defendant should have been allowed. (Proffatt on Jury Trials, secs. 166,

181; *Gray* v. *People*, 26 Ill. 344; *Arnold* v. *The State*, vol. 2, No. 5, "The Reporter," 175.)

IV. The confession of defendant made to Smith was inadmissible. (*Commonwealth* v. *Elwell*, 1 Gray, 463; *People* v. *McMahon*, 15 N. Y. 384; *People* v. *Wentz*, 37 Id. 303; *Teachout* v. *People*, 41 Id. 7; *State* v. *Guild*, 5 Halst. 163; *Commonwealth* v. *Knapp*, 9 Pick. 496; *Commonwealth* v. *Tuckerman*, 10 Gray, 190; *Commonwealth* v. *Morey*, 1 Gray, 461; *Regina* v. *Moore*, 2 Heard's L. Crim. Cas. 499; *Regina* v. *Warringham*, Id. 487; *State* v. *Phelps*, 11 Vt. 116; 1 Greenl. Ev., sec. 223; Roscoe's Crim. Ev. 40, 48; 2 Russ. Crimes, 837; 5 Car. & P. 318; 1 Archb. Crim. Pr. 389, note 1; 2 Russ. Crimes, 839, note n, 840; *People* v. *Johnson*, 41 Cal. 452.)

*M. A. Murphy*, Attorney General, for Respondent:

I. The indictment contains a sufficient description of the moneys alleged to be embezzled. (*Commonwealth* v. *Sawtelle*, 11 Cush. 142; *Commonwealth* v. *Duffy*, 11 Cush. 145; *McKane* v. *State*, 11 Ind. 195; *Commonwealth* v. *Bennett*, 118 Mass. 443; *Commonwealth* v. *Butterick*, 100 Id. 1; 2 Bish. Crim. Pr., sec. 705; *Commonwealth* v. *Grimes*, 10 Gray, 470; *People* v. *Bogart*, 36 Cal. 245; *Larned* v. *Commonwealth*, 12 Metc. 245, 246; *Commonwealth* v. *Stebbins*, 8 Gray, 492; *Riley* v. *State*, 37 Tex. 763; Bish. Crim. Pr., sec. 319; *State* v. *Smith*, 13 Kan. 274; *State* v. *Walton*, 62 Me. 106; *Brown* v. *State*, 18 Ohio St. 496; *City and County of San Francisco* v. *Randall*, 54 Cal. 408; *Gravatt* v. *State*, 25 Ohio St. 162; *People* v. *De la Guerra*, 31 Cal. 416; *State* v. *Munch*, 22 Minn. 67; *State* v. *Flint*, 62 Mo. 393.)

II. The statement of the defendant to the witness Smith was admissible. Considered as a confession, it was not within any of the rules excluding confessions. It was not made to one in authority. It had no reference to the crime charged in the indictment. There was no inducement held out to defendant of immunity from punishment for any offense, nor was were there any sufficient holding out of temporal advantage to result to himself. (*State* v. *Kirby*, 1 Strob. 155–387; 1 Greenl. on Ev., sec. 222, 223; *Crop-*

*per* v. *State*, 1 Morris (Ia.), 259; *Teachout* v. *People*, 41 N. Y. 7.)

III. The juror Coyne was a competent juror. The forming and expressing an opinion that a crime has been committed is no disqualification. (*State* v. *Thompson*, 9 Iowa, 188; *Stewart* v. *People*, 23 Mich. 63; *State* v. *Potter*, 18 Conn. 165; *State* v. *Wilson*, 38 Id. 126; *People* v. *Hayes*, 1 Edm. 582; *State* v. *Gillick*, 10 Iowa, 98; *People* v. *Brotherton*, 47 Cal. 388; *People* v. *King*, 27 Id. 507; *Thomson* v. *People*, 24 Ill. 65.)

By the Court, HAWLEY, J. :

Appellant was county treasurer of Storey county from the sixth day of January, A. D. 1879, up to and including the thirtieth day of October, 1880. He was subsequently indicted, tried, and convicted, for the crime of embezzlement, for unlawfully, willfully, and feloniously converting to his own use twenty-one thousand nine hundred and forty dollars and ninety-one cents of the public money, intrusted to his safe keeping, transfer, and disbursement, as county treasurer, alleged to have been committed on the thirtieth day of October, 1880, and before the finding of the indictment. One count charges the public money thus converted to be the property of Storey county. The other charges the same money to be the property of the state of Nevada and the county of Storey. The money is described as "sundry gold and silver coins, lawful money of the United States, and of the aggregate value of twenty-one thousand nine hundred and forty dollars and ninety-one cents, a more particular description of which gold and silver coins and money the grand jury can not give, as they have no means of knowledge."

A demurrer was interposed to the indictment, upon the ground that it "fails to describe any of the moneys alleged to be embezzled, or to state the denominations or character of any of said moneys."

1. It is claimed that the court erred in overruling this demurrer. It is also argued that evidence of a general deficiency is not sufficient to establish the crime of embezzlement; that the evidence must show the conversion of some

particular sum or sums of money received by the officer at some one time, or to have been under his custody or control at some particular time.

We are of opinion that the indictment substantially conforms to the provisions of sections 234 and 235 of the criminal practice act (1 Comp. L. 1858, 1859), and that it is in all respects sufficient. It is unnecessary in an indictment against a county treasurer for embezzlement to specify with certainty the particular kind of funds, whether gold or silver coins or legal tender notes, or to give the denomination of each coin or note, or to specify from whom or what particular time the money was received. As against a public officer, it is sufficient to allege and prove the felonious conversion to his own use of any money that came into his possession, or was under his control by virtue of his office. (*State* v. *Walton*, 62 Me. 109.)

In cases of larceny, or receiving stolen goods, it is usually within the power of the owner to describe the kind and character of money or other property stolen, and in the case of embezzlement by clerks, agents, and servants of private parties there is but little difficulty in giving a particular description of the money embezzled. The acts of the clerk, agent, or servant are generally performed under the direct supervision or control of the principal, who, therefore, has, or may at any time have, full and accurate knowledge of the character of the particular sums, and from whom received, and possesses facilities for tracing out the facts while transpiring or recent. But these considerations do not apply to a county treasurer. He is the only person who knows the kinds and character of money in his custody and under his control. The public at large can exercise no constant supervision over his acts, nor can it, like a private individual, assume the direct custody of the funds at any moment. The proper authorities may, it is true, require him to account, may count and examine the funds in his possession; but all these funds may be changed long before the act of embezzlement is done or the intent is formed, and if the law required the kinds and character of money embezzled, and the particular date of embezzlement of any

particular piece to be stated in the indictment and proved upon the trial, it would, as a general rule, "be wholly impracticable to trace or identify the particular pieces of money or bills, or to determine whether the sums embezzled were in the one shape or the other, or both; and it would be equally impracticable to show that any particular sum embezzled was the same money or funds received from any specified source or person, for, though the amounts might correspond, this would by no means establish their identity. And if the kind of funds received by the treasurer in any particular instance, whether credited upon the books or not, could be identified as received from a particular source, the fact that this was not found in the treasury at any subsequent time would not prove that the same money had been embezzled, as this might have been honestly paid out to public creditors, and an equal amount embezzled in other species of funds, or those received from a different source." (*The People* v. *McKinney,* 10 Mich. 91.)

In the case from which we have quoted, the defendant, McKinney, was state treasurer. He was indicted for embezzlement of the public money under his control. The indictment did not describe the particular kind or character of money or notes alleged to have been unlawfully converted, nor did it state that the character and denominations of said money were to the grand jurors unknown. It was held to be sufficient. This decision was followed and approved by the supreme court of Minnesota, in the case of an indictment against the treasurer of that state, for embezzlement (*State* v. *Munch,* 22 Minn. 67); and by the supreme court of Kansas in the case of a similar indictment against a county treasurer. (*State* v. *Smith,* 13 Kan. 274.)

In *The State* v. *Flint,* 62 Mo. 393, the defendant, who was a sheriff and tax collector, was indicted for embezzlement, and, in considering certain objections urged against the indictment, the court said: "We do not think there is any valid objection to the indictment on account of its failure to state from whom defendant received the money, or to point out what particular money he embezzled, or whether

it was state or county revenue, or how much belonged to either. It is charged that he converted to his own use, while he was in office as sheriff and collector, large sums of money received by him as such, belonging to the state and county revenue, and that was sufficient."

The objections urged to the indictment and to the rulings of the court in giving and refusing certain instructions, as to the sufficiency of the proof of a general deficiency in the accounts of the defendant as county treasurer, can not, for the reasons stated, be sustained.

2. Did the court err in disallowing appellant's challenge to the juror Coyne? This juror, upon his *voir dire*, testified as follows: "I believe and have an unqualified opinion that there was a deficiency in the accounts of the defendant as treasurer of Storey county; but I have neither formed nor expressed an unqualified opinion as to defendant's guilt or innocence of the crime with which he stands charged. * * * I can give defendant a fair and impartial trial upon the evidence." The defendant subsequently interposed a peremptory challenge to this juror, and the record shows that all of his peremptory challenges were exhausted.

The challenge was interposed under the provisions of the eighth subdivision of section 340 of the criminal practice act, which declares that " a challenge for implied bias may be taken for all or any of the following causes, and for no other: * * * Eighth—Having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged." (1 Comp. L. 1964.)

The object of the law is, as stated in *State* v. *McClear*, 11 Nev. 66, to secure to the defendant and the state a fair and impartial trial. The real condition of the juror's mind must be determined from the whole of his testimony, and if it appears therefrom that he has no deliberate and fixed opinion in favor of, or against the defendant, he is not disqualified by virtue of this provision of the statute.

There is in almost every criminal case some fact which must be proved upon the trial, that is generally, if not universally, known, and is the subject of newspaper comment and of frequent conversations in the community, and if the

knowledge thereof, or the expression of an opinion thereon, would disqualify a person from serving as a juror, it would be impossible in many cases to obtain a competent and intelligent jury.

As a general rule, the opinion of the juror, in order to disqualify him, must be upon the merits; that is, whether "the prisoner is guilty or not guilty of the offense charged," and not upon some one particular fact or feature of the case. Thus, in cases of homicide, it has been held that a juror who has formed the opinion that the defendant did the killing is not incompetent if he has not formed an opinion as to whether the defendant was guilty or innocent of crime in the act of killing. (*State* v. *Thompson*, 9 Iowa, 190; *Lowenberg* v. *People*, 27 N. Y. 342.)

In the case last cited the court said: "It is clear that the forming of an opinion that the prisoner had done an act necessary to be shown, among others, in order to convict him, was not the forming of an opinion that he was guilty of murder or any other crime." So here, the fact that the juror had an opinion that there was a deficiency in the accounts of the defendant, which was a fact to be proved in the case, was not such an opinion as to the defendant's guilt, as, of itself, to disqualify the juror. The fact of the deficiency was not necessarily so intimately blended with the main fact in issue as to prevent the juror from determining the question of defendant's guilt or innocence from the evidence that might be adduced at the trial.

We think it is apparent from the answers given by the juror that his mind was in such a condition as to enable him "to weigh the evidence in impartial scales and a true verdict render according to the law and the evidence." If so, he was a competent juror. (*State* v. *McClear*, 11 Nev. 68.) It is not to be expected, nor does the law require, that a juror will come into court without any opinion whatever. The defendant has only the right to demand that each juror will be free from prejudice and bias, and have no deliberate, fixed, or settled opinion as to his guilt.

In *The State* v. *Lawrence*, a juror had read the accounts of a homicide in the newspapers, and "believed the man

had been murdered and that the defendant did it," but said that he had no bias for or against the defendant, and believed he could try the case as impartially as if he had never heard of the case. He was held to be competent.

The court said: "It is scarcely possible, in a community where an act has been done which startles and attracts the public mind, to obtain a juror, who should be intrusted with so grave a matter as the determination of the question of the guilt or innocence of the accused, whose mind has received no impression with regard to the case. Either from public rumor or newspaper reports, almost every person competent to serve as a juror, will have learned something in regard to the circumstances attending the commission of the alleged offense. And, as some impression, more or less strong, is almost invariably made by such reports, the rule which would demand a juror with no opinion respecting the case, would, in cases attracting public attention, and in which intelligence is most needed, practically exclude every intelligent man from the jury." (38 Iowa, 54.) Similar views are expressed in *The State* v. *Bruce*, 48 Iowa, 536, and in *Stewart* v. *The People*, 23 Mich. 72.

In *The State* v. *Spaulding*, Kansas (reported in American Law Register for February, 1881, p. 110), where the defendant, a city clerk, was indicted for embezzlement, a juror testified "that he had an opinion, founded upon rumor, that public money was missing; that he had no opinion as to the guilt or innocence of the defendant, and that he believed defendant was city clerk." This juror, upon substantially the same reasons which we have already expressed, was held to be competent.

It was, perhaps, unnecessary to refer to any other than our own decisions, for it is clear to our minds, from the principles announced in the concluding portion of the opinion in *State* v. *McClear*, and the views expressed in *State* v. *Davis*, 14 Nev. 439, that the court did not err in disallowing this challenge.

3. Was the confession of the defendant to the witness Smith admissible? Defendant was a candidate for re-election. There was a rumor on the streets that he was a

defaulter. Two of his bondsmen, W. H. Smith and C. Derby, having heard these rumors, became anxious, and were desirous of ascertaining the truth or falsity of the reports concerning the condition of the affairs in the treasurer's office. The defendant, when first spoken to by Smith, denied the rumor. The next day, Mr. Smith met him in front of the court-house, and again stated to him the rumors that were afloat; urged him to have the money counted by J. E. McDonald; said that if the money was not counted it would injure him in the election. Nothing was said in reference to shielding him from a criminal prosecution. None was threatened or spoken of. The remarks of Smith were made, as he testifies, solely "with a view to induce the defendant to allow the money in the treasury to be then counted." Defendant testified that Smith said to him that "there is no use putting this thing off any longer. If you are short, come out and say so, and *we will try and fix it up;*" that thereupon he, Smith, and McDonald went into the treasurer's office, and Derby was sent for; that he understood from Smith's remark "that he (Smith) would assist him in making good his accounts, and that the money deficient would be paid into the county treasury before there would be any count of the money made by the county commissioners," and that if it had not been for said remark he never would have made any statement. Soon after the parties went into the treasurer's office the defendant said: "Boys, I might as well make a clean breast of it. I am short." The witness Smith then asked him in what amount. He said, about twenty-two thousand dollars. He was asked what he had done with the money. He said he "had spent some at the primaries, and had operated some in stocks." We are of opinion that this statement was admissible.

The law excluding confessions is based in a spirit of charity for the weakness of human nature, and rests upon the theory, that a man when charged with crime and threatened with the punishment of the law, or promised immunity therefrom, may be induced, while in an alarmed and excited condition of mind, to make statements that are not

true.   Such statements, when so made, are, and should be, excluded by the courts.

But the essential elements that would entitle the defendant to this charity of the law are lacking in the facts of this case.   At the time the statement was made, the defendant was not charged with any crime.   No complaint had been filed.   He was not under arrest.   No prosecution was threatened.   There was no.promise or representation made by Smith which could reasonably have induced the defendant to state things that were not true.   Moreover, Smith was not an officer.   He had no authority.   He did not stand in any such relation toward the defendant as to exercise any undue influence or control over the mind of the defendant as to make his confession inadmissible.   It is true that Smith and Derby were jointly liable upon the official bond of the defendant in the sum of twenty thousand dollars; that they might have been able to pay the deficiency in defendant's accounts before the money could have been officially counted by the county commissioners, and it may be, if the accounts had been made good, that no criminal prosecution would have been instituted (although that fact would not have relieved defendant from such prosecution.) But these facts, if they had any influence over the defendant, were only calculated to make him tell the truth.   Holding the office he did, it must be presumed, in the absence of any showing to the contrary, that he was a man of ordinary mind and intelligence, and we can not conceive of any reasonable theory which, upon the defendant's own statement of the conversation, could have induced him to tell an untruth as to his guilt.

It is only in cases where the confession is obtained by mob violence, or by threats of harm, or promises of favor or worldly advantage held out by some person in authority, or standing in such intimate relation from which the law will presume that his promises or threats will be likely to exercise such an influence over the mind of the accused as to induce him to state things that are not true, that will authorize the courts to exclude the confession or admission.

The law in its general application to this question, as well as others, is founded in reason and common sense. Its object is to ascertain the truth, and it is not its purpose to reject any reliable and competent means of attaining it.

The judgment of the district court is affirmed.