THE STATE OF KANSAS v. DAVID L. CROWDER.

1. CRIMINAL LAW—*Confession—Evidence.* A person charged with the crime of offering money to a prosecuting witness in a state case to absent himself and not testify against the accused testified on the trial of that case that he had offered the witness money, but coupled with this, statements explanatory of his motive and intent in making the offer. On his own trial he was convicted principally on this statement. *Held,* That his statement was not a confession within the well-defined legal meaning of that word, implying an acknowledgment of guilt.

2. ———— *Inadmissible Evidence.* Letters to the accused from persons entirely disconnected with the transaction are not admissible as original evidence in his behalf.

3. CONVERSATION—*Evidence, Properly Rejected.* An offer by the accused to prove by the postmaster that they had a conversation in which it was agreed that the accused should offer the prosecuting witness money, is properly rejected because it does not connect the offer agreed upon with the particular offer charged against the accused.

*Appeal from Kingman District Court.*

PROSECUTION under § 155 of the crimes act. The opinion contains a sufficient statement of the facts. Trial at the September term, 1888; conviction, and sentence to imprisonment in the county jail for thirty days, and to pay a fine of $150, and the costs. The defendant *Crowder* appeals.

*Strohm & Foley,* for appellant.

*L. B. Kellogg,* attorney general, and *Ashbaugh & Steck,* for The State.

Opinion by SIMPSON, C.: The appellant was convicted at the September term, 1888, of the district court of Kingman county, of the crime of attempting to induce a certain witness in a trial pending in said court to absent himself from the trial of the cause, and not to testify, with intent to obstruct and prevent the due administration of justice. The witness, one W. G. Wilson, was the complaining witness in a state case against one W. W. Magruder. The appellant was also a witness for Magruder, and gave material testimony in his defense, and while on the witness stand and during his cross-examination stated that he had talked with Wilson, and then followed these questions and answers:

"Q. For what purpose did you have this conversation with him? A. I had been acquainted with Wilson for some time, and met him here.

"Q. For what purpose did you seek this conversation? A. With Wilson?

"Q. Yes, sir. A. Yes — probably you know Mr. Wilson had sent some things through the mail, and I had agreed to look him up. I saw him here, as I went to Wichita to look him up, and when I saw him I was somewhat surprised, and shook hands with him.

"Q. Who brought up the conversation of the Magruder trial? A. I am sure I can't say who brought it up to-day.

"Q. Was there any money mentioned in this conversation between you and him? A. Yes, sir.

"Q. You offered him $150 to leave, didn't you? A. No, sir.

"Q. Wasn't that the object of the conversation? A. No, sir.

"Q. Did you promise him that? A. Me?

"Q. Yes, you did make that offer to him? A. Yes, sir.

"Q. What is your business, Mr. Crowder? A. I am— at the present time?

"Q. Yes, sir. A. I am in various businesses—three, at least.

"Q. Mention them. A. Practicing law, for one; druggist business, for another; and looking up mail robbery.

"Q. Where are you practicing law? A. At Conway Springs.

"Q. Where are you a druggist? A. At Conway Springs.

"Q. Where do you look up mail robbery? A. All over the country.

"Q. Where did you expect to get this money? A. What for?

"Q. This you mentioned. A. I will tell you, if you want to know, all about it.

"Q. Why, yes. A. I offered him $150 because—the fact was that I had an object in view, that I was going to wire Mr. Goar, the inspector, and we could trace him. He first broached the matter to me, and said he would take $250 and go; and finally he said he would take $150.

"Q. You offered him $150? A. Yes, sir, after he asked me if I would give it."

He filed an affidavit to support his motion for a continuance of the case, and a part of that affidavit contained this statement:

"D. L. Crowder, being first duly sworn, says that the promise of money to said W. G. Wilson as in said indictment set forth, was made by him in the discharge of his official duty, as detective in the post office department of the United States government, and not for the purpose of inducing or in any way directly or indirectly by influencing the said W. G. Wilson to absent himself from the said court, or to prevent him directly or indirectly from testifying as alleged in said indictment. That affiant had reason to believe and did believe that said W. G. Wilson had before accepted a bribe to absent himself from the above-named court, and had reason to believe and did believe that if a bribe was offered to said W. G. Wilson that said W. G. Wilson would leave the jurisdiction of the court. That if said Wilson should leave Kingman county, and the jurisdiction of said court, for any cause whatever, the

said W. G. Wilson might finally escape from the officers of the United States government, and evade arrest. That said promise of one hundred and fifty dollars was made for the purpose that the affiant might discover that said W. G. Wilson, was at the time susceptible to bribe, and it was the purpose and intention of the affiant to advance to said W. G. Wilson a'part of the said money, and then have a warrant for the arrest of the said W. G. Wilson issued and served upon the said W. G. Wilson, and thus hold him until the inspector of the post office department could be notified of his arrest."

The case against him was made by proof of his statement on the Magruder trial that he had offered Wilson money not to testify. These statements were proved by the stenographic notes of the trial; by the evidence of the clerk of the court, and by the evidence of two persons who had heard the statements made by Crowder while on the witness stand; and by that part of the affidavit for continuance, given above.

On the trial the appellant testified in his own defense as follows:

"Q. What is your business, Mr. Crowder? A. I am a druggist.

"Q. Anything else? A. Practicing law.

"Q. Anything else? A. I look after mail robbery for the mail department.

"Q. State whether or not you have any other business or trade. A. No.

"Q. Are you not a stenographer? A. No, sir.

"Q. How long have you been engaged in looking up mail robbery? A. I came to Kansas some two years ago. I quit for a short time, and last year was looking after them again.

"Q. How long since you commenced looking after mail robbery? A. The first time in 1877.

"Q. Have you followed that business continuously? A. No, sir.

"Q. How long since you commenced the last time? A. The first time was on the—was on last September, this last time. I could tell by refreshing my memory from a book I have.

"Q. State whether or not you were occupied in that business last May. A. I was.

"Q. State whether or not you were in Kingman county sometime last May. A. I was.

"Q. About what time was it? A. I came on the noon train on the 2d, I think; not positive.

"Q. How long did you remain here? A. I remained here the 2d and 3d. I think I went away the 4th.

"Q. State whether or not you knew one W. G. Wilson. A. I did.

"Q. State whether or not you knew one W. W. Magruder. A. I had met him once or twice.

"Q. State whether or not you know of a criminal trial in the Kingman district court, in which W. G. Wilson was the complaining witness and W. W. Magruder was defendant. A. Yes, sir.

"Q. State whether you had anything to do with that trial. A. Nothing at all.

"Q. State whether or not you testified in that case. A. Yes, sir.

"Q. State whether or not you came to testify in that case. A. I did not.

"Q. Had you any other connection with that trial, officially or not? A. No, sir; not with the trial.

"Q. Mr. Crowder, please state how you came to visit Kingman at that time? A. In the winter, sometime, I was informed that one W. G. Wilson was shot, at Spivey; and I had never seen Magruder, but I sent word to him and asked him who this W. G. Wilson was. I never heard from him until in the winter; and he said he was a bridge carpenter, and that he gambled some.

"Q. Who said that? A. W. W. Magruder.

"Q. About whom? A. This W. G. Wilson.

"Q. Go ahead. A. I asked him to give a description of the man; he did so. I asked if he knew his whereabouts, and he said he did not. That was the first time I ever saw Mr. Magruder; and after that I sent him word to advise me when his case was in court, and he did so. I came up here and didn't know Mr. Magruder; he was pointed out to me and I went to him and entered into conversation, and he pointed out Wilson to me, and I saw he was the man that I had seen in this mail robbery. I sat down and wrote the department that Mr. Wilson was here, and I ascertained that he had been offered a bribe at one time. I had seen Wilson once before, and he shook hands with me. He said, 'Crowder, I want to see you.' He said, 'Is Magruder a friend of yours?' and I

said 'Yes.' And he said, 'I know how you can get him out—'

"Q. Mr. Crowder, I will ask you by what authority, if any, you had come here for the purpose of looking up post-office robbery, if at all? A. I did. I came for the purpose of looking up the Conway Springs robbery, which occurred on the night of October 30th.

"Q. Whom, if anybody, did you suspect of that? A. W. G. Wilson.

"Q. Do you know where he was at the time you came here? A. No, sir.

"Q. Do you know where he was before? A. I do not. Why, the fact was I lost sight of him for months. I heard he was at Spivey, and then he was gone; and then I learned from a railroad man that he was at Winfield, and when I went there he was gone.

"Q. Now, Mr. Crowder, state what conversation, if any, you had with Wilson in reference to money?

"Q. Mr. Crowder, state what offer, if any, you made to him of money? A. I offered him — promised him $150. I wasn't going to give him all of it, but part of it, and wire the inspector that Mr. Wilson was here, and arrest him.

"Q. State why you made him the offer."

He then read a part of his affidavit for continuance, that was admitted by the attorney for the state, as the evidence of the absent witness, and is as follows:

"My name is J. T. McClure; I reside at Macon, Missouri; my business is post-office inspector of the United States post office department. I have known D. L. Crowder, the defendant, for the last four or five months; the defendant, D. L. Crowder, has been in the employ of the United States post office department for more than one year last past, whose duty it was to trace up, discover and detect parties who have committed robberies in the United States post office. The defendant, during all the time I have mentioned, has been acting under the express authority of the government postal inspectors; it is his duty to go to any part of the United States where he has been officially notified of any post-office robbery, and then to follow any clew he may have. That on October 30, 1887, the post office at Conway Springs was robbed, and that D. L. Crowder, the defendant, was notified, and authorized to follow any clew he could obtain, as to the parties suspected of being the perpetrators of said robbery; and that in

May, 1888, he went to Kingman, Kansas, as it was known that one W. G. Wilson, was a witness in a case in the district court of Kingman county, Kansas, and said W. G. Wilson was one of the parties suspected of being implicated in the said robbery of the Conway Springs post office.

"I have known D. L. Crowder, the defendant, officially and by correspondence, for more than a year, and fully six months before I ever met him personally. The reason I never met D. L. Crowder before I did is, that the government postal inspectors are continually changed from one state to another, and I have only been assigned to the territory embracing the state of Kansas but a short time."

The defendant then introduced Ethan Waite, who testified that he was the postmaster of the city of Kingman, and had been for about three years. That he was somewhat acquainted with the defendant, and had a conversation with him in reference to Wilson a few days before the defendant's arrest, and before the trial of Magruder. He was then asked what the conversation was that he had with the defendant respecting Wilson. This was objected to by the state, and the objection sustained. The defendant then offered to prove by this witness that in this conversation it was agreed among other things that Mr. Crowder was to offer Wilson money, and by that artifice to hold him. This was objected to, and the objection sustained. The postmaster was then asked whether or not Crowder had any authority, within his knowledge, as a post-office detective. This was objected to, and the objection sustained.

An effort was made to have the city marshal of Conway Springs give the details of the post-office robbery at that place on the 30th of October, previous to the trial, and this was objected to by the state, and the objection sustained.

The postmaster at Conway Springs was examined, and identified an envelope addressed to the appellant as one used by government officials; and when asked if such envelopes were used by anybody else, an objection was sustained to the question. The appellant then sought to introduce the following letters that had been identified during his examination, but

the court sustained an objection to them as being incompetent and irrelevant.    They are as follows:

## "EXHIBIT 1.

*Subject, ——— ; Case No. ———.*        *Return this letter with your reply.*

POST OFFICE DEPARTMENT,
OFFICE OF POST-OFFICE INSPECTOR,
ST. LOUIS, MO., July 2, 1888.

*D. L. Crowder, Esq., Conway Springs, Kas.*—DEAR SIR: Your letters of May 3d, 1888, and June 18, 1888, just received, having been forwarded to Washington, D. C., from Emporia, Kansas, and then here.    Am sorry to learn you are in trouble.    Yes, I offered you $100 for evidence to secure the arrest and conviction of the El Dorado, Kansas, P. O. burglars, and remember to have telegraphed you to come to Wichita, Kansas, on that business.    If I can be of any service to you, communicate with me at St. Louis, Mo.

Yours very truly,        WILL T. MCDONALD,
*P. O. Inspector.*"

## "EXHIBIT 2.

*Subject ——— ; Case No. ———.*        *Return this letter with your reply.*

F. M. GOAR,
*P. O. Inspector.*

POST OFFICE DEPARTMENT,
OFFICE OF POST-OFFICE INSPECTOR,
ST. LOUIS, MO., August 1, 1888.

*Mr. D. L. Crowder, Conway Springs, Kansas*—DEAR SIR: Your letter of July 25, 1888, received and noted.    I do not hesitate to say I earnestly requested you while in Conway Springs last fall looking after the P. O. robbery, to keep a sharp lookout, and report to me any clue you might discover looking to the guilty parties.    I am truly sorry your desire to find the guilty party has gotten you into trouble. Surely you can get the object of your course before the court, and have the case dismissed against you.    I am now at Abilene, Kansas, for a day or two.        Very respectfully.

F. M. GOAR, *P. O. D.*"

"Post Office Department, Office
of Post-Office Inspector, St.
Louis, Mo.    Official business.

A penalty of $300 is fixed by
law for using this envelope for
other than official business.
ABILENE, KAN., Aug. 1, 1888."

## "EXHIBIT 3.

"Said envelope was stamped on the back as follows: 'Conway Springs, Kas., Aug. 2, 1888.'"

On this state of facts these questions arise, and are discussed by counsel for appellant, who insist: First, that there is no

evidence of the wrongful intent necessary to constitute the crime, but on the contrary, it is established that the offer of money to Wilson was not corrupt; second, that the uncorroborated confession of Crowder did not warrant a conviction; third, that the court erred in excluding the evidence of Postmaster Waite and others as to the object of Crowder in offering the money to Wilson.

I. The first contention can be disposed of in a few words. It was incumbent on the state to prove the criminal intent, but this could only be done circumstantially. This was a question exclusively for the jury, and they could fairly say, under all the circumstances, that the offer of money to the witness was a corrupt one. Crowder is present at the trial of Magruder, and goes upon the witness stand and testifies strongly in his behalf. It transpires that he attempted to induce the prosecuting witness to absent himself and not testify against Magruder. The pretense for the attempt is, that Wilson is suspected of a post-office robbery at Conway Springs. If he would accept a bribe not to testify against Magruder, he could be arrested on that charge, and held until a United States official could be notified of his arrest. Why could he not be arrested on a charge of robbing the post office, and held until the proper authorities could be notified? The explanation of Crowder is not satisfactory to the ordinary mind, and the jury were warranted on the state of facts presented, to say that the offer of the money was corrupt. This much was a natural inference from the offer itself, and this was greatly strengthened by the act of Crowder as a material witness in behalf of Magruder. His presence at the trial; his volunteer testimony in behalf of Magruder; his offer of money to the prosecuting witness not to appear and testify against Magruder; his declaration that he had told the deputy sheriff, Linn Hallowell, that perhaps he wanted a warrant for Wilson, the day before he offered the money; and the denial of the deputy that any such statement was ever made to him; his statement to the deputy sheriff that he was there because he was interested in the Magruder case, produce a very strong conviction that he

is there in the interest of Magruder, and for no other purpose. This finding of the jury is aided by the declaration of Crowder that his sole pretense for arresting Wilson on a charge of having received a bribe, was to hold him until a certain post-office detective could be informed of his arrest.  Suppose he had been arrested on the charge preferred against him by Crowder, he would have been held for trial by the state authorities, and not surrendered to the post-office inspector on a mere suspicion that he had participated in the Conway Springs post-office robbery.  As a matter of legal inference the jury were right in this question, and the circumstances attending the offer abundantly show that it was a corrupt one.

II. As to the second assignment of error urged by the appellant, it may be said there is no necessity for the consideration of some of the nice distinctions made by many reported cases, as to whether or not a conviction can be supported by an uncorroborated confession.  In this case there has been no confession, because that term has a well-defined legal meaning, and implies acknowledgment of guilt.  It is a person's declaration of his agency or participation in a crime. ( *People v. Parton,* 49 Cal. 632; *People v. Strong,* 30 id. 157; 1 Greenl. Ev., §170, and authorities cited in note.)  Nowhere in the various statements made by the appellant — neither in his evidence in the Magruder case, his evidence on his own trial, or his affidavit for continuance — does he make any confession of guilt, or of unlawful intention, or of intent to commit a crime. He admits the fact that he offered Wilson money not to testify, and this admission of the fact of the offer is not to be excluded merely because it may, when connected with other facts, tend to establish guilt.  To make the rule contended for by counsel for appellant applicable in this case, Crowder must have confessed that he offered money to Wilson with the corrupt intent to obstruct and prevent the administration of justice.  But this is the very thing that he denies, and offers proof explanatory of the circumstances under which the offer was made.

Admissions by persons accused of crime suggesting the inference that such crime was in fact committed as alleged, are always admissible against the person making the admission. (1 Greenl. Ev., §§ 213, 215; *Brown v. The State,* 32 Miss. 433; *The State v. Holenscheit,* 61 Mo. 302; *The State v. Brown,* 48 Iowa, 382; *Cain v. The State,* 18 Tex. 387; *The State v. Carrick,* 16 Nev. 120; *Blackburn v. Com.,* 12 Bush [Ky.], 181; *Com. v. Sanborn,* 116 Mass. 61; *Eiland v. The State,* 52 Ala. 322; *Cox v. People,* 80 N. Y. 500.)

In this case the appellant admits by his statement under oath, the fact that he offered the witness Wilson money to absent himself, and not to testify in the Magruder case, but these admissions are always coupled with explanatory statements of the intent with which the offer was made; so that the most that can be said about his various declarations is, that the offer of money is an admitted fact, and the sole remaining inquiry is as to the motive and intent of the offer. It is not either a judicial confession as a plea of guilty, nor is it an extrajudicial confession of guilt. It is an admission reduced to writing so far as the affidavit for continuance is concerned, and it becomes subject to the rules governing documentary evidence. It is a most satisfactory establishment of the fact that money was offered Wilson not to testify, and that is the limit of the legal effect that can be given it. It is very like a case of homicide, in which the killing is admitted, but it is claimed that it was done in self-defense. As to the intent with which the money was offered, this must be gathered from all the circumstances surrounding the offer. These may come under the general designation of confessions by conduct, but after all they are usually original circumstantial evidence. (*People v. Stanley,* 47 Cal. 113; *McKee v. People,* 36 N. Y. 113.) Some of the deductions or inferences from the attending circumstances, we have adverted to in the first paragraph of this opinion, in commenting on the question as to whether or not a corrupt intent was shown on the trial.

III. This brings us to the consideration of the various questions about the rejection of evidence offered by the ap-

pellant. (1.) As to the letters from the post-office inspectors: These letters were identified by Crowder while on the witness stand, and subsequently were offered in evidence by the appellant, and rejected. They are from post-office inspectors to the appellant, and both dated in July, after the appellant had been indicted in the month of May previous thereto, and both show conclusively that the only relation the appellant sustained toward the post-office department was, that one of the inspectors had requested him to keep a lookout for any clue to the robbery of the Conway Springs post office; and one of the inspectors offered the appellant $100 for evidence to secure the arrest and conviction of the El Dorado post-office burglars. Now it must be recollected that the appellant admits the offer of money, but says he was a government detective, and made the offer with the design to cause Wilson's arrest, so that he could be held until the postal authorities were notified. To make this defense, it was necessary for him to prove that Wilson was at least suspected of having committed an offense; that the appellant knew of these suspicions, and that he was a government detective looking after such matters. His own sworn statement that he was a government detective would have been sufficient *prima facie* showing. (*Com. v. McCue*, 82 Mass. 326, and authorities cited.) Or proof that he had acted notoriously as such, is *prima facie* evidence of his official character. (1 Greenl. Ev., § 83.) It is not in general necessary to prove the written appointment of public officers. All who are proved to have acted as such are presumed to have been duly appointed, until the contrary appears. (Greenl. Ev., § 92.) This proposition is indorsed and approved by Bishop in his work on Criminal Procedure, vol. 2, § 783; see also § 828. The reason of the doctrine is said to be founded mainly in public convenience.

There is no theory of the case under which the letters of third persons are admissible in evidence. If he wanted to support his claim of government employment, he must do it by the testimony of witnesses, and not by letters of people disconnected with the action. The ruling excluding them

was a merciful one for the appellant, and therefore not reversible error. (2.) It follows from this that the exception to the rejection of the offer to identify these letters by Leach, the postmaster of Conway Springs, is not well taken.

IV. The last exception to be noticed arises from the refusal of the trial court to prevent Waite, the postmaster at Kingman, from answering a question as to the conversation he had with the appellant before the trial of Magruder, in regard to Wilson. The appellant then offered to prove by the witness that in this conversation Crowder was to offer Wilson money, and by that artifice to hold him. This offer was properly rejected, in the first place because it is not definite and certain; it does not connect the offer of money with the particular offer made by the appellant to Wilson. It is claimed that it is a self-serving declaration of the appellant, and a part of the *res gestœ*. But the offer is not to prove a declaration by the appellant, but to show the knowledge of the postmaster at Kingman, that an offer of money to Wilson was to be made for some purpose not indicated.

And finally, some criticism of the instructions of the court is indulged in, but it is sufficient to say generally that these instructions fairly embody the law applicable to the state of facts presented, and whatever errors they contain are not sufficient for reversal.

There are some general observations with reference to the facts in this case that ought to be made for the purpose of showing the condition of mind produced by their investigation, and the spirit in which the rules of the criminal law have been applied. The appellant goes to Kingman a day or two before the trial of Magruder; he states to the deputy sheriff that he is there because he is interested in the Magruder case; he admits that he offered the prosecuting witness against Magruder money not to testify; he claims on the witness stand that he told the deputy sheriff that he would probably want a warrant on that day; this is specifically denied on the witness stand by the officer; he is a volunteer witness

on behalf of Magruder, and gives material testimony to his defense; he claims at one time that Wilson is suspected of having been concerned in the robbery of the post office at Conway Springs; at another he claims that Wilson is guilty of sending obscene matter through the mails; he offers no proof to show that he was invested with any authority to cause the arrest of Wilson; what he does offer shows conclusively that he is not employed by the postal authorities in any capacity; he offers the prosecuting witness money not to testify, and yet makes no explanation as to how he is to be reimbursed for this outlay; his pretense is, that if Wilson would accept the money, he could have him arrested by the state authorities and held until a post-office inspector could be notified; he makes no explanation why he could not have been arrested for the mail robbery and held; according to his own statement on the witness stand, he told Magruder of his conversation with Wilson, and of Wilson's offer to take $150 and go away; and Magruder said, "Damn him, I will not give him a cent;" thus admitting in terms, that he had made the offer on behalf of Magruder, and reported the terms to Magruder; in his conversation with Wilson, he told Wilson that he was a friend of Magruder; his statement on the witness stand that he did not have any conversation with Magruder about offering Wilson money; his statement that he did not know Wilson, and that Magruder pointed him out to him; and his subsequent statement that he had met him once before. These contradictory and astounding statements, made by the defendant himself, produce a belief in his guilt that amounts to an absolute conviction; so that we would not reverse the case unless the record shows that during the trial such grave and material errors occurred as to make a reversal an imperative necessity as a legal right.

We recommend that the judgment of conviction be affirmed.

By the Court: It is so ordered.

All the Justices concurring.