## THE STATE OF KANSAS v. WILLIAM H. NIELD.

### No. 224.

1. PLEA IN ABATEMENT—*Evidence Properly Refused.* When the matters alleged in a plea in abatement filed by the defendant in a criminal case do not constitute a legal defense, the court properly refuses to hear evidence in support of the same, although the state may have joined issue on the facts.

2. INTOXICATING LIQUORS—*Assistant Attorney General.* The provisions of the prohibitory liquor law concerning the appointment of an assistant attorney general to prosecute violations of said law in any county wherein it is not enforced by the county attorney are constitutional and valid. *In re Gilson, Petitioner* 34 Kan. 641, followed.

The State v. Nield.

3. —— *Decision of Attorney General is Final.* When the attorney general decides that legal grounds exist for the appointment of an assistant to act in a certain county, and makes such appointment, the correctness of his decision as to the existence of such grounds cannot be questioned by the defendant in an action brought by such assistant for a violation of said law.

4. OFFICE AND OFFICERS —*Presumption of Legal Appointment.* The court will presume, in the absence of evidence to the contrary, that one acting in a public office with apparent undisturbed possession has been regularly and rightly appointed.

5. INTOXICATING LIQUORS —*Evidence of Other Sales.* Evidence as to other sales of intoxicating liquors should ordinarily not be taken into consideration by the jury in determining the guilt or innocence of the defendant as to a particular sale upon which the state has elected to rely for conviction.

6. COMPLAINANT —*Knowledge or Notice Necessary.* The defendant cannot be convicted of an offense of which neither the prosecuting officer nor the complaining witness had knowledge or notice when the information was filed.

7. INTOXICATING LIQUORS— *Nuisance — Sufficient Information.* An information which charges the defendant with keeping a cer, tain place where intoxicating liquors were sold and kept for sale in violation of law is not fatally defective on the ground of uncertainty because it also alleges that in so doing the defendant kept and maintained and assisted in keeping and maintaining a nuisance at such place.

8. —— *Club-rooms — Statute Construed.* Paragraph 2536 General Statutes of 1889, has exclusive reference to club-rooms and other like places which are maintained for the use and benefit of an association or company of persons, who resort thereto by reason of a particular or exclusive connection therewith in the nature of a membership.

9. —— *Separate Verdicts Unnecessary.* Separate verdicts need not be returned upon each count of an information; it is sufficient if the findings of the jury upon the different counts are separately and definitely stated in one verdict.

10. —— *Nuisance — Sufficient Evidence.* The evidence held to be sufficient to sustain the verdict on the nuisance count.

MEMORANDUM.—Appeal from Saline district court; R. F. THOMPSON, judge. Prosecution for violations of the prohibitory liquor law. Defendant, William H. Nield, was convicted on five counts. He appeals.

Reversed as to first four counts, and affirmed as to the fifth count. The opinion herein, filed July 9, 1896, states the material facts.

*Mohler & Hiller*, for appellant.

*F. B. Dawes,* attorney general, and *W. H. Bishop*, assistant attorney general for Saline county for The State.

The opinion of the court was delivered by

GARVER, J.: At the December term, 1895, of the district court of Saline county, the defendant, William H. Nield, was convicted on five counts under an information filed against him charging violations of the prohibitory liquor law. The information was verified by W. H. Bishop, as assistant attorney general for said county. The first four counts charged the defendant with illegal sales of intoxicating liquor on certain named dates, while the fifth count charged him with maintaining a nuisance by keeping in the city of Salina a certain place, specifically described, where intoxicating liquors were sold and kept for sale in violation of law. A verdict was returned finding the defendant guilty on each of the five counts, upon each of which he was sentenced to pay a fine of $100 and to be imprisoned for 30 days.

To the information the defendant filed a plea in abatement, alleging

"that the said district court of Saline county, Kansas, has acquired no jurisdiction to try and hear said case, no information having been filed by the county or prosecuting attorney of said county of Saline, or the attorney general or assistant attorney general of the state of Kansas, there being no such officer known to the laws of Kansas as an assistant attorney general for Saline county, Kansas, the said county of Saline

now being and for about one year past having had a duly elected, qualified and acting county attorney, to wit, C. W. Banks, whose duty it is to prosecute all offenses committed in his said county, and who has been and now is in the full discharge of the duty of his office, and able, ready and willing to discharge all of his duties as such county attorney, and not in any wise disqualified, and who has not neglected or refused to enforce the provisions of the prohibitory liquor law, which have been and still are being enforced in said county of Saline; that said alleged information is signed by one W. H. Bishop, who is not the duly elected, qualified and acting county attorney nor the prosecuting officer of said county, and is in no wise authorized or qualified or legalized to do and perform the matters and things required of the county attorney or prosecuting officer of said county of Saline; that by reason of the said facts the said district court of Saline county has not acquired nor has any jurisdiction to hear and determine the cause and the matters and things in said alleged information set forth and contained and charged against said W. H. Nield.''

The state having replied to said plea by denying each allegation therein contained, the defendant demanded a trial by jury of the issue thus joined. This the court refused. Thereupon the defendant offered to show that, at the time of the filing of the information, C. W. Banks was the duly elected, qualified and acting county attorney for said county, in the full discharge of the duties of his office, able, ready and willing to discharge the same, and not in any way disqualified; that he had not neglected or refused to enforce the provisions of the prohibitory liquor law; and that said law was enforced in said county by said county attorney. The court sustained the objection of the state to the introduction of any evidence in sup port of the plea, and refused to hear any evidence except such as would tend to show that W. H. Bishop

was not appointed assistant attorney general for Sa-
line county.   The defendant having announced that
he had no evidence to offer on that proposition, the
plea in abatement was overruled.   Subsequently the
same questions were again presented and passed upon
in the same manner by the court on a motion filed by
the defendant to quash the information.

It may be conceded that when a plea in abatement
is filed in a criminal case alleging facts which, if es-
tablished, would abate the action, the defendant is
entitled to a trial of such issues by a jury.   But when
the matters alleged in the plea do not constitute a
legal defense to the prosecution, or are not a proper
subject of inquiry therein, the court is not required
to submit such matters to a jury or to grant a hearing
of an issue thus attempted to be made, even though
the state has joined issue on the facts, instead of de-
murring to their sufficiency.  (*Oscanyan v. Arms Co.*,
103 U. S. 261.)   As in our opinion no triable issue of
fact was presented by the plea, the ruling of the court
thereon was proper.

It is contended by counsel for defendant that para-
graph 2546 of the General Statutes of 1889, which
authorizes the attorney general, under the conditions
therein named, to appoint an assistant attorney gen-
eral for the purpose of enforcing the provisions of the
prohibitory liquor law in any county, is, in this re-
spect, unconstitutional, and that the claimed appoint-
ment thereunder of W. H. Bishop is therefore illegal
and void.   We think this question has been deter-
mined adversely to the defendant by the supreme
court in *In re Gilson, Petitioner*, 34 Kan. 641.   That
was a case where Gilson had been convicted under
this same law on an information filed against him in
the district court of Anderson county by H. L. Poplin,

as assistant attorney general for that county.    The imprisonment which followed such conviction was claimed to be illegal on the same ground that objection is now made to the authority of W. H. Bishop, viz., that the statute is unconstitutional and void so far as it attempts to confer upon the attorney general authority to appoint such assistants.    What was said by HORTON, C. J., in delivering the opinion of the court in that case is equally applicable in the case at bar, and renders unnecessary further discussion of the question.

By the plea, the defendant also attempted to inquire into the existence of the grounds upon which the appointment of Bishop was made, it being claimed that the county attorney of Saline county was not unable and had not neglected or refused to enforce the provisions of the prohibitory liquor law in his county, and that the same were being enforced at the time such appointment was made.    We do not think such inquiry can be made in this case.    Being an officer created at the will of the legislature, the legislature had a right to prescribe the conditions upon which such officer might be appointed, and to name the appointing power.    The attorney general being a part of the executive department of the government, the legislature had not only the right to confer upon him the authority to appoint assistants to aid in the enforcement of the laws of the state, but it was peculiarly proper that such power should be exercised by the chief law officer of the state.    It was also within the constitutional powers of the legislature, in the creation of an office of this character, to make the judgment of the appointing officer final and conclusive as to the existence of the facts which rendered such appointment proper or necessary.    The necessi-

ties of the case require, when an officer may be appointed only upon the existence of certain facts, for the performance of public duties, that the determination of the necessity for the appointment by the appointing power should be held to be conclusive as against any collateral attack, and that the dealings of such officer with third persons and with the public should be accepted and recognized without further question. His usefulness would be destroyed and his discharge of public duties seriously impaired if an attack, such as was attempted in this case, could be made; or if a reexamination could be had by the courts, in every case in which his acts were involved, to determine the existence of the facts necessary to justify his appointment. The determination of such question in this case would not necessarily be conclusive or binding in another case, in which an entirely different decision might be made. Thus we might have, by the different decisions, a public officer with recognized authority in one case and without authority in another and similar case. An inquiry into the right to occupy a public office cannot be made in this manner. (*Lynch v. Chase*, 55 Kan. 367; *The People, ex rel., v. Cazneau*, 20 Cal. 504; *The People v. Martin*, 19 Colo. 565; *Board of Comm'rs v. Gould*, 39 Pac. Rep. [Colo. App.] 895; *Ohio, ex rel. Atty. Gen., v. Covington*, 29 Ohio St. 102, 114; *The State, ex rel. Atty. Gen., v. Doherty*, 25 La. Ann. 119; *Lask v. United States*, 1 Pinney [Wis.] 77.)

In the case of *Lynch v. Chase*, supra, one of the questions was the conclusiveness of the decision of the governor as to the existence of sufficient grounds for the removal of Chase as warden of the penitentiary, and involved the same principle as the case at bar. In all such cases, the determination of the facts

and the decision of the officer authorized to act in the removal or appointment, in the absence of fraud or other exceptional grounds, are conclusive.

We think the plea did not present any issue as to the fact of Bishop's appointment. That question was, therefore, not before the court, notwithstanding it offered to permit the defendant to show that he had not, in fact, been appointed. It was not necessary for the state, in the first place, to prove his appointment. If he assumed the duties of the office, was in the actual performance of the same, and was recognized by the court as such officer, he would be at least a *de facto* officer, whose acts were valid as to the public and third persons. As said by the court in the Gilson case :

"The statute authorizes the appointment of assistant attorneys general; H. L. Poplin was acting in that capacity ; the court recognized him as an assistant attorney general ; his acts are valid, at least as an officer *de facto*. If the legality of his appointment is to be inquired into, other proceedings must be instituted. The title to his office cannot be determined in this case."

As a general rule it is sufficient *prima facie* proof of the authority of a public officer to show that he assumed to act in the discharge of the duties of the office. The court may presume that one thus in the undisturbed exercise of a public office is acting therein by legal authority. The rule is thus stated by Mr. Greenleaf :

"For the same reasons, and from the strong presumption arising from the undisturbed exercise of a public office that the appointment to it is valid, it is not, in general, necessary to prove the written appointments of public officers. All who are proved to have acted as such are presumed to have been duly

appointed to the office until the contrary appears; and it is not material how the question arises, whether in a civil or criminal case, or whether the officer is or is not a party to the record." (1 Greenl. Ev. § 92.)

See, also, *The State v. Crowder*, 41 Kan. 101, 112; *Jones v. Gibson*, 1 N. H. 266; *Johnston v. Wilson*, 2 id. 202; *Jewell v. Gilbert*, 64 id. 13; *Choen v. The State*, 85 Ind. 209; *People v. Lyman*, 2 Utah, 30: *Cary v. State*, 76 Ala. 78; *Chapman Township v. Herrold*, 58 Pa. St. 106; *Commonwealth v. Kane*, 108 Mass. 423; *The State, ex rel., v. Ferguson*, 31 N. J. Law, 107, 119; *Bank of United States v. Dandridge*, 12 Wheat. 64, 70; *Potter v. Luther*, 3 Johnson, 431.

Ordinarily the facts tending to show that one is an officer *de facto* must be established by extrinsic evidence. But when, as in this case, it appears from the proceedings then before the court, and from matters of which the court will take judicial notice, that a certain person is in the active performance of the duties of an office of which he has apparent undisturbed possession, the court is possessed of facts from which it may presume legal authority, and may, at least in the absence of any showing to the contrary, recognize such one as having the authority which he assumes. This principle is fully sustained by the authorities above cited. In *The State v. Ferguson*, supra, it is said:

" It is one of the exceptions to this general rule which requires the best evidence of which the point is susceptible, that proof that an individual has acted openly in a public office is *prima facie* evidence of his official character without proving his election or producing his commission. (1 Greenl. Ev. § 83.) The plaintiff therefore was not obliged to produce the township book in order to prove the office of the defendant. It was enough for him to show that he had

held himself out to the public as the incumbent of the office in question."

In *Commonwealth v. Kane*, supra, it is held:

, "The foundation of the rule of evidence that a person acting as a public officer has been duly appointed to the office which he assumes to exercise is, that all acts done by what appears to be public authority are presumed to be rightly done until the contrary is proved."

In *Bank of United States v. Dandridge*, supra, it is said:

"By the general rules of evidence, presumptions are continually made in cases of private persons of acts even of the most solemn nature when those acts are the natural result or necessary accompaniment of other circumstances.   In aid of this salutary principle the law itself, for the purpose of strengthening the infirmity of evidence and upholding transactions intimately connected with the public peace and the security of private property, indulges its own presumptions.   It presumes that every man in his private and official character does his duty, until the contrary is proved. . . .   It will presume that all things are rightly done unless the circumstances of the case overturn this presumption according to the maxim, *omnia presumuntur rite et solemnitur esse acta, donec probetur in contrarium.*   Thus, it will presume that a man acting in a public office has been rightly appointed. . . ."

This rule applies not merely to the chief officers, but also to deputies and assistants who are specially provided for and recognized by law.   As the law expressly recognizes such an officer as an assistant attorney general, to act for a particular county in the state, the court will take judicial notice of that fact, and accord to one so acting the benefit of the presumption which arises from his performance of the

duties of the office. (*Himmelmann v. Hoadley*, 44 Cal. 213, 225; *The People v. Johr*, 22 Mich. 461; *The People v. Lyman*, 2 Utah, 30.)

It may be remarked also that this presumption of law is aided in this case by the fact that, in making oath to the information, W. H. Bishop states that he is the duly appointed, qualified and acting assistant attorney general for said county.

Upon the trial of the case upon its merits, the testimony of numerous witnesses was admitted tending to show various unlawful sales of intoxicating liquors other than those upon which the state, by direction of the court, elected to rely for conviction. The defendant requested the court to instruct the jury not to take into consideration the evidence as to such other sales in determining the guilt or innocence of the defendant as to the particular sales upon which the state elected to rely. This the court refused, and nothing upon the subject was given in the general instructions. In this, we think, the court erred. While it is proper, in the first place, for the state to introduce evidence concerning any unlawful sales made by the fendant, yet, when an election has been made of a particular transaction upon which the state relies for conviction, the evidence as to other illegal sales is practically eliminated from the case. It cannot be used or referred to merely for the purpose of bolstering up and strengthening the case made by the state upon the elected transaction; and the defendant is entitled to have the jury so instructed. There are cases in which the evidence as to other transactions is admissible for certain purposes; as, in *The State v. Coulter*, 40 Kan. 87, and *The State v. Marshall*, 2 Kan. App. 792, recently decided by this court, in which it was held that the evidence as to other sales might be

considered for the purpose of showing that the liquor sold by the defendant was intoxicating. But even then such evidence should be limited to that special purpose. Under the facts of this case we think the instruction asked should have been given.

The court was further asked to instruct the jury that the defendant could not be convicted of an offense of which the assistant attorney general had not some knowledge or notice at the time the information was filed. This instruction was also refused. It is well settled by the decisions of the supreme court that although an information is sufficient which charges in general terms a violation of the prohibitory liquor law, yet that under such general charge the state cannot ask for a conviction of an offense which the person or persons preferring the charge did not have in contemplation and which was unknown at the time the prosecution was commenced. In law, every complaint or information filed in a criminal case, however general its language, presents to the court a particular transaction as a violation of the criminal statutes of the state which is to be the subject of investigation, and upon which the case must stand or fall. The state has no right to charge one thing and upon the trial convict the defendant on an entirely different thing, and one which neither the prosecuting officer nor the prosecuting witness, if there was one, had in mind when the proceedings were commenced. In this case, the prosecuting officer alone made oath to the truth of the charges contained in the information. It is of course not necessary that he should have had personal knowledge or perhaps even definite notice of each particular transaction relied upon; but it is essential that he should have had information or notice of such violations of the law by

the defendant as might reasonably be said to have included the particular transactions relied upon for conviction. In *The State v. Hescher*, 46 Kan. 534, it was held to be error for the court to refuse an instruction almost identical with that asked by the defendant in this case under circumstances substantially similar. The application of the principle is not affected by the fact that, in most of the cases before the supreme court in which this question has been considered, the prosecuting attorney filed with the information the sworn statements of witnesses, previously examined by him, showing the particular sale or sales relied upon. Such statements merely furnished evidence of what particular transactions were in contemplation when the prosecution was commenced. In the absence of such statements it is proper to show these matters by evidence upon the trial, and to them the inquiry should be limited. (*The State v. Brooks*, 33 Kan. 708; *The State v. Moseli*, 49 id. 142.)

It is further contended that the fifth count of the information, which is the nusisance count, is bad, for the reason that it charges that the defendant did keep and maintain and *assist* in keeping and maintaining a common nuisance, by keeping and maintaining a place where intoxicating liquors were sold and kept for sale in violation of law. It is claimed that, by charging the defendant both with maintaining and with assisting in maintaining, there is such uncertainty as to vitiate the entire count. The statute (Gen. Stat. 1889, ¶ 2533) provides:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of any of the provisions of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in viola-

tion of this act, are hereby declared to be common nuisances, . . . and the owner or keeper thereof shall upon conviction be adjudged guilty of maintaining a common nuisance."·

In misdemeanors all are principals. The one who aids and assists may be charged, tried and convicted in the same manner as if he were a principal. (Gen. Stat. 1889, ¶ 5180 ; *The State v. Cassady,* 12 Kan. 550 ; *The State v. Shenkle,* 36 id. 43.) The statement in the information that the defendant "assisted" in keeping and maintaining a common nuisance may be regarded as mere surplusage. It is, at most, pleading a legal conclusion. The facts alleged with certainty and directness are that the defendant did own, keep and maintain a place where intoxicating liquors were sold and kept for sale in violation of law. This was sufficient. In the case of *The State v. Cassady,* supra, in which the information charged the defendant, as principal, with the offense of burglary and larceny, the jury returned a verdict finding him guilty as an "accessory" to the offense of larceny. It was contended there that the verdict was invalid because of its variance from the charge in the information. The court held that there was no substantial variance, as, under the statute, the charge against the defendant, as a principal, included that of being an accessory, and the fact that the jury stated the defendant's particular connection with the crime did not vitiate the verdict. Here the defendant is charged with owning and keeping a place where intoxicating liquors are illegally sold and kept for sale. The fact that the pleader also states that by so doing he kept and assisted in keeping a nuisance is unimportant. Paragraph 2536 of the General Statutes of 1889, to which we are referred, makes special mention of one who

aids, assists and abets in keeping or maintaining a clubroom or other place in which intoxicating liquor is kept for use or sale as a beverage. But, in our opinion, that section has no application to this case. It does not relate to such places as are commonly known as "joints"; but has reference to clubrooms, or other like places, which are conducted or maintained for the use and benefit of an association or company of individuals, who claim the right to resort thereto by virtue of some particular or exclusive connection in the nature of a membership.

Objection is also made to the form of the verdict, it being contended that a separate verdict should be returned on each count. The verdict reads:

"We, the jury impaneled and sworn in the above-entitled case, do upon our oaths find the defendant guilty as charged in the first count of the information and guilty; second count of the information and guilty; third count of the information and guilty; fourth count of the information and guilty; fifth count of the information and guilty."

We do not think the objection is well taken. It is not necessary that there should be a separate verdict for each count of the information. It is necessary for a verdict definitely and clearly to show the finding of the jury upon each count; but such findings, separately stated, may be included in one verdict.

The verdict of the jury on the fifth count is sustained by the evidence, and the defendant was given a fair trial thereon. Some question is made whether the place as described by the information was proved by the evidence. We think the evidence was sufficient in this respect to sustain the verdict. For the reasons given in this opinion, the judgment of the court as to the first, second, third and fourth counts

of the information is reversed, and, as to the fifth count, it is affirmed.

The case will be remanded to the lower court for further proceedings in accordance with this opinion.

All the Judges concurring.